1  FRAMROZE M. VIRJEE (S.B. #120401)
   fvirjee@omm.com
2  MICHAEL W. GARRISON, JR. (S.B. #212647)
   mgarrison@omm.com
3  BENJAMIN J. KIM (S.B. #233856)
   bjkim@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
6  Facsimile: (213) 430-6407

7  Attorneys for Defendant
   General Dynamics Information Technology, Inc
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  JOHN D. SARVISS, individually       Case No. CV08-1484 DDP (CWx)
    and on behalf of all others similarly
13  situated,                           **DEFENDANT GENERAL DYNAMICS
                                         INFORMATION TECHNOLOGY,**
14              Plaintiff,               **INC.'S REPLY TO PLAINTIFF'S
                                         STATEMENT OF GENUINE ISSUES**
15       v.                              **IN OPPOSITION TO DEFENSE
                                         STATEMENT OF**
16  GENERAL DYNAMICS                     **UNCONTROVERTED FACTS AND**
    INFORMATION TECHNOLOGY,              **CONCLUSIONS OF LAW AND**
17  INC., and DOE ONE through and        **RESPONSE TO PLAINTIFF'S**
    including DOE TEN                    **EVIDENTIARY OBJECTIONS**
18
                Defendants.
19                                       Hearing Date:  June 15, 2009
                                         Time:          10:00 a.m.
20                                       Location:      Courtroom 3
                                         Judge:         Judge Dean D. Pregerson
21

22

23

24

25

26

27

28
                                                1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

As part of its moving papers and pursuant to Local Rule 56-1, Defendant General Dynamics Information Technology, Inc. ("GDIT") filed a [Proposed] Statement of Uncontroverted Facts and Conclusions of Law ("GDIT's Statement") in Support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion"). In response, Plaintiff John Sarviss ("Sarviss" or "Plaintiff") filed a document entitled Plaintiff's Statement of Genuine Issues in Opposition to Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("Plaintiff's Statement"). Defendant General Dynamics Information Technology, Inc. ("GDIT") respectfully submits its Reply to Plaintiff's Statement.

In Plaintiff's Statement, Sarviss has attempted to create genuine issues of material fact by purporting to dispute 13 of the 41 uncontroverted facts set forth in GDIT's Statement. Sarviss has failed to dispute an additional five uncontroverted facts and has merely asserted evidentiary objections. An examination of Plaintiff's purported "disputes," however, reveals that Plaintiff has failed to raise a single genuine issue of material fact. In fact, in several instances, despite his assertion, Plaintiff does not actually dispute the material fact(s) at issue. Moreover, the evidence cited by GDIT is admissible for the purposes of GDIT's Motion.

In addition, as set forth below, Plaintiff repeatedly and impermissibly attempts to dispute facts by directly contradicting his prior sworn deposition testimony. Under the "sham" affidavit rule, however, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact in order to defeat summary judgment. See, e.g., Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005); First v. Allstate Ins. Co., 222 F. Supp. 2d 1165, 1169 n.3 (C.D. Cal. 2002).

Moreover, many of the so-called "disputes" alleged by Sarviss are immaterial. Significantly, the existence of conflicting immaterial facts does not

preclude summary judgment.  See Fed. R. Civ. Proc. 56(c) (summary judgment "should be rendered forthwith if … there is no genuine issue as to any material fact … ."); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986) (ruling that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (emphasis added).  The "evidence" cited by Plaintiff -- to the extent it is even admissible -- fails to contradict the undisputed material facts set out by GDIT.

As this Reply to Plaintiff's Statement demonstrates, Sarviss has not submitted any admissible evidence to raise a genuine dispute as to any material fact.  Accordingly, summary judgment in favor of GDIT is entirely proper and appropriate.

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
| --- | --- |
| 1.      Defendant GDIT provides information technology solutions and services to military, government and commercial customers within the United States and around the world, including some of the United States' highest-priority defense and homeland security projects.  (Declaration of Kevin L. Thompkins ("Thompkins Decl."), ¶ 4.) | 1.      Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |

2.     As part of a contract with the United States Army's Security Assistance Training Management Organization (SATMO), GDIT deployed a team, including Plaintiff John Sarviss ("Sarviss"), to the Islamic Republic of Pakistan to train Pakistani Air Force helicopter pilots in military night flight operations. The training primarily revolved around teaching the Pakistani Air Force pilots to fly military helicopters at night using light-gathering devices known as Night Vision Goggles ("NVGs"). (Thompkins Decl., ¶¶ 5-6; Deposition of John Sarviss ("Sarviss Depo.") 51:8-12.)

2. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶ ¶ 3, 17.[1] Indeed, although Plaintiff initially understood that his job was to train "Pakistani helicopter pilots in night vision combat tactics," (Sarviss Depo. 51:10-11), in fact, most of the actual training was done on the ground, by another GDIT employee, John Landis. Plaintiff's role was merely to take over the helicopter as pilot in the event of a problem, serving as a co-pilot or crewmember while an experienced Pakistani helicopter pilot had control of the craft, practicing flying with night vision goggles. Most of the time, Plaintiff was a crewmember and a Pakistani was the pilot. "My primary job in Pakistan was to keep myself and my co-pilot alive because of their lack of knowledge on how to operate an aircraft at night." Sarviss Depo., 128:1-8. While deployed by GDIT in Pakistan, Sarviss worked with experienced Pakistani helicopter pilots. Sarviss did

---

[1] Relevant portions of the Sarviss Deposition are attached as Exhibit 1 to the Saviss Declaration, filed herewith.

GDIT'S REPLY TO PL.'S STMT. OF GEN. ISS. IN OPP. TO DEF. STMT. OF UNCONTR. F. & CONCL. OF LAW
CV08-1484 DDP (CWX)

not teach them how to fly helicopters. Before he left for Pakistan, Sarviss was advised by GDIT that each of these Pakistani helicopter pilots had at least 2000 hours of helicopter flight experience. Sarviss described this in his deposition. Sarviss Depo., 56:16-25. Although he later learned that this was not true, each of the Pakistanis knew how to fly a helicopter before Sarviss met them. John Landis of GDIT was responsible for training the Pakistani helicopter pilots on basic night vision flying techniques. Each of the Pakistani helicopter pilots was provided with written materials to study and each was required to attend ground classroom sessions regarding night vision flying techniques. Sarviss Depo., 132:9-134:14; 157:11-25. During his work in Pakistan, Sarviss acted as a co-pilot or crewmember for the experienced Pakistani helicopter pilot, ready to take the controls, if necessary. Sarviss Depo., 158:12-160:1. This is routine work for individuals who are experienced in helicopters, routine

|  | manual work for which those in the industry ordinarily are paid overtime wages. |
|---|---|

### GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH

**NO. 2:** Sarviss does not dispute that GDIT deployed a team of experienced helicopter pilots, which included him, to Pakistan as part of a contract with SATMO. Contrary to his deposition testimony, Sarviss now appears, in his recently filed declaration, to be disputing that he was training Pakistani Air Force pilots. Under the "sham" affidavit rule, however, Sarviss is bound by his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment. See, e.g., Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225; First v. Allstate Ins. Co., 222 F. Supp. 2d 1165, 1169 n.3.

Sarviss admitted at his deposition that the mission to which he was assigned was "training Pakistani helicopter pilots in night vision goggle combat tactics in support of the global war on terror." (Sarviss Depo. 51:8-12.) Sarviss also admitted that he performed the duties consistent with that mission. Specifically, Sarviss made the following admissions at his deposition regarding his job duties in Pakistan:

- Sarviss was the first pilot to come to Pakistan to train students.

"Q. You were the first pilot to come [to Multan, Pakistan] and to be training students and to have met Lieutenant Commander Shahid's approval?

"A. That's correct.

"Q. So you were the first person to do all three of those?

"A. 'I was the first person to come here and within one week of being here was actually training students and had met Lieutenant Shahid's approval.' That is an all-encompassing statement. And, yes,

1    it's true." (Id. 209:19-210:10 (emphasis added).)

2    • Each pilot trainee had differing levels of experience, skills and knowledge, and Sarviss was assigned to teach a different pilot trainee each night, which prevented him following "a natural progression of **training.**" (Id. 157:11-158:10 (emphasis added).)

3

4    • He attended a 5-day pre-deployment flight safety course that served as a refresher for flying the Bell 412 helicopter in which Sarviss would be **training** members of the Pakistani Air Force. (Id. 103:4-10; 104:9-14); see also Sarviss' Statement of Genuine Issues in Opposition to this Motion, ¶¶ 19-20 (responding to these undisputed issues as set forth by GDIT in its Separate Statement: "Plaintiff agrees this is undisputed for purpose of the defense Motion for Summary Judgment.)

5

6

7

8    • He evaluated each of his trainees' skill level. (Id. 157:11-158:16.)

9    • He determined what each trainee could and could not do, and tailored his mission plans based on his independent evaluation of each student's skills and abilities. (Id. 158:12-16; 158:22-163:5; 185:8-24.)

10

11    • He demonstrated the skills he was teaching. (Id. 161:9-15.)

12    • He supervised his trainees while they flew the helicopter. (Id. 158:22-163:5; 185:25-186:15.)

13

14    • He constantly monitored the helicopter's instruments. (Id. 185:25-186:15.)

15

16    • He checked to ensure that the trainee was interpreting the terrain correctly. (Id. 185:25-186:15.)

17    • He adjusted the mission profile based on what happened during the flight. (Id. 185:8-24.)

18

19    • He took the controls away from the trainee when *he* decided it was necessary to do so solely based on his evaluation of the situation. (Id. 158:12-160:1; 181:14-183:15; 185:25-186:15.)

20

21    • He decided if and when the trainee was ready to resume flying the helicopter, whether to return the controls to him, and whether to continue the mission or return to base. (Id. 157:11-158:16; 158:22-163:5; 185:8-24.)

22

23    • He responded to being asked: "And after you **taught** the[ students] you had a sense of where they were in the proficiency spectrum?" by testifying "As well as I could" -- *not* that he did not train the students. (Id. 158:12-21 (emphasis added).)

24

25

26    • He relied extensively upon his 30 years of experience and own training in conducting the flight training. (Id. 130:6-17; 131:8-132:8.)

27    • He, on his own initiative, instituted a rule that the pilot must return the helicopter with 700 pounds of fuel. (Id. 158:12-160:1; 184:6-186:5.)

28

- He prepared instrument approaches for "divert" fields. (Id. 199:14-200:17.)

- He located a survival escape and evasion area, and created and put into place a survival escape and evasion plan. (Id. 199:14-200:17.)

- He was made the SIP -- who is responsible for ensuring that flight standards were consistent for all of the Instructor Pilots -- for the *entire* squadron, and conducted 10 "captain check rides" to evaluate and certify a trainee as an aircraft commander. (Id. 162:20-163:5; 165:20-166:9.)

- He wrote in an email that he and his colleague -- *not* GDIT -- pull[ed the Pakistan mission] off. (Id. 227:14-228:25, Ex. 13.)

It is clear from the above deposition testimony that Sarviss was "training students" while in Pakistan. Sarviss cannot dispute this fact through his recently submitted declaration by inconsistently claiming that he was merely a "copilot" or "crewmember." Consequently, GDIT's material facts in Paragraph No. 2 remain undisputed.

| | |
|---|---|
| 3.     In late April 2007 or early May 2007, Sarviss saw and responded to a GDIT job posting on the internet for "qualified AH-1F and UH-1H/Bell 412 helicopter pilots to support [GDIT's] aviation requirements in pakistan [sic]." (Sarviss Depo. 42:9-43:20 & Exhibit ("Ex.") 3.)  AH-1F and UH-1H/Bell 412 are models of helicopters used for military and defense purposes. (Thompkins Decl.    ¶ 5.) | 3.     Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 4.     The job posting required candidates to "be recognized as an Army Master Aviator and be qualified as either | 4.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |

| | |
|---|---|
| an SIP [Standardization Instructor Pilot] or IP [Instructor Pilot] with in-depth experience in using NVGs." (Sarviss Depo. 44:8-45:1 & Ex. 3.) | |
| 5.    An "Army Master Aviator" must have 2,000 flight hours. (Sarviss Depo. 44:8-16.) | 5.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 6.    The terms "SIP" and "IP" are acronyms for Standardization Instructor Pilot and Instructor Pilot, respectively. In addition to being a pilot instructor, an SIP typically ensures that flight standards are consistent for all of the IPs. (Sarviss Depo. 44:22-45:11.) | 6.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 7.    Sarviss had approximately eight times the flight hours required to be considered an Army Master Aviator, and his background and training included coursework to become an SIP and training and experience working with NVGs. (Sarviss Depo. 10:12-11:7; 14:4-23; 24:8-26:13; 39:6-11; 39:24-40:25; 45:17-19 & Ex. 1.) | 7.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 8.    Sarviss had flown helicopters, including AH-1F and UH-1H/Bell412 helicopters, for more than 16,00 hours, and had approximately 4,700 hours | 8.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |

| | |
|---|---|
| flying at night and 260 hours of flying with NVGs. (Sarviss Depo. 24:8-26:13; 43:17-44:5 & Ex. 1.) | |
| 9. On or about May 14, 2007, GDIT hired Sarviss to work on the team of NVG helicopter pilot trainers in Pakistan. (Sarviss Depo. 59:17-60:16; Thompkins Decl., ¶ 6.) | 9. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 10. GDIT hired Sarviss because he met the highly technical and specialized requirements of the position and his ability to train helicopter pilots as an SIP. (Thompkins Decl., ¶ 6.) | 10. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶¶ 3, 17. Indeed, although Plaintiff initially understood that his job was to train "Pakistani helicopter pilots in night vision combat tactics," (Sarviss Depo. 51:10-11), in fact, most of the actual training was done on the ground, by another GDIT employee, John Landis. Plaintiff's role was merely to take over the helicopter as pilot in the event of a problem, serving as a co-pilot or crewmember while an experienced Pakistani helicopter pilot had control of the craft, practicing flying with night vision goggles. Most of the time, Plaintiff was a crewmember and a Pakistani was the pilot. "My primary job in Pakistan was to keep myself and |

my co-pilot alive because of their lack of knowledge on how to operate an aircraft at night." Sarviss Depo., 128:1-8. Pursuant to Rule 602 of the Federal Rules of Evidence, Plaintiff objects to the Thompkins Declaration in connection with these "facts" for there is no foundation that his evidence in this regard is from personal knowledge. Pursuant to Rule 802 of the Federal Rules of Evidence, the evidence should be excluded as hearsay.

## GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH

**NO. 10:** GDIT provided evidence of the reasons it hired Sarviss -- because he met certain requirements for the position. Sarviss' proffered evidence does not actually dispute GDIT's <u>reasons</u> for hiring him. He merely puts forward evidence to dispute his duties while in Pakistan, which is immaterial to the fact(s) alleged in Paragraph No. 10. Indeed, Sarviss has provided no evidence to dispute <u>why</u> GDIT hired him. Moreover, Sarviss' declaration that he was merely a "copilot" or "crew member" directly contradicts substantial prior sworn deposition testimony, which he cannot do to raise a disputed issue of fact. <u>See</u> GDIT's Reply to Plaintiff's Response to Paragraph No. 2. Consequently, GDIT's material facts in Paragraph No. 10 remain undisputed.

## GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY

## OBJECTIONS TO PARAGRAPH NO. 10: Plaintiff's objection that the

Thompkins Declaration lacks foundation and is hearsay should be overruled. First, Thompkins states in his declaration that he has personal knowledge of the facts

contained in the Declaration. (Thompkins Decl., ¶ 1.) Indeed, Thompkins "oversaw the task for which Plaintiff John Sarviss was hired and the various administrative action(s) which pertain to his employment," and is "familiar with Mr. Sarviss' recruitment and the history of his employment at GDIT." (Id. ¶ 3.) Accordingly, Thompkins had personal knowledge of the reasons for Sarviss' hiring at GDIT, which establishes the proper foundation, and Sarviss proffers no evidence to support his argument that Thompkins lacked the requisite personal knowledge. Second, Sarviss also objects on the grounds that the evidence should be excluded as hearsay. The objection is nonsensical. Nothing in the offered evidence constitutes an out-of-court statement offered by the declarant for the truth of the matter asserted; there is no reference to any such conversation or statement. More importantly, as discussed above, Thompkins had personal knowledge of the reasons for Sarviss' hiring, and Sarviss has failed to put forward any foundation establishing that such testimony is hearsay. Accordingly, both personal knowledge and hearsay objections made by Sarviss should be overruled.

| | |
|---|---|
| 11.    Sarviss' GDIT job title was "Operations Analyst V," an exempt salaried position at GDIT, and he did not hold any other positions with GDIT. (Sarviss Depo. 126:19-127:9; 134:15-16; Thompkins Decl. ¶ 6.) | 11. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶ 5. After GDIT gave Sarviss the amorphous title "Operations Analyst V" he told Thompkins, prior to his deployment to Pakistan, that he "never analyzed any operations in [my] life, nor did [I] feel [I was] qualified to do it." Sarviss Depo., 126:19-127:14 at 127:12-14. Thompkins told him "don't worry about it. It's just a job title." Id., |

127:15-17. Plaintiff's concern was that "the original solicitation that we got that was on the Internet was looking for helicopter pilots. And we didn't know when our job went from manual labor to driving a desk." Id. 127:15:21. While in Pakistan, "I didn't analyze anybody's operation." Id. 127:22-25. The assertion that GDIT claims that all persons with this title are exempt is irrelevant and should be excluded under Rule 402 of the Federal Rules of Evidence. Pursuant to Rule 602 of the Federal Rules of Evidence, Plaintiff objects to the Thompkins Declaration in connection with these "facts" for there is no foundation that his evidence in this regard is from personal knowledge.

## GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 11:

GDIT proffered undisputed evidence that Sarviss was assigned a specific job title, which GDIT classified as exempt, and that he held no other job titles. Plaintiff's proffered evidence does not dispute these facts. First, GDIT classified Sarviss' position as an exempt, salaried position, and Sarviss has failed put forward sufficient evidence contradicting this fact. Second, Sarviss does not dispute that his job title was, in fact, "Operations Analyst V." He only disputes whether the job title was, in his opinion, appropriate, but such dispute is not material to any factual

- 13 -

issue in Paragraph No. 11.  See Fed. R. Civ. Proc. 56(c); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48, 106 S. Ct. at 2510.  Moreover, to the extent that Sarviss now claims that his job title was not "Operations Analyst V," Sarviss is contradicting his prior sworn deposition testimony in which he specifically admitted that his job title while employed at GDIT was Operations Analyst V, and he cannot do so to raise a disputed issue.  (Sarviss Depo. 126:19-127:6).  See, e.g., First, 222 F. Supp. 2d at 1169 n.3; Hambleton Bros. Lumber Co., 397 F.3d at 1225.  Consequently, GDIT's material facts in Paragraph No. 11 remain undisputed.

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 11:** Sarviss objects to the facts in Paragraph No. 11 on the grounds that the exempt classification of Sarviss' position is irrelevant and that Thompkins lacks foundation; such objections should be overruled.  First, the exempt classification of the Operations Analyst V position is entirely relevant to GDIT's Motion, in which one of the issues is whether GDIT properly classified Sarviss, who also held this job title, as an exempt, salaried employee.  Second, as discussed above, Thompkins had personal knowledge of the facts contained in his declaration, he "oversaw the task for which Plaintiff John Sarviss was hired and the various administrative action(s) which pertain to his employment," and he is "familiar with Mr. Sarviss' recruitment and the history of his employment at GDIT." (Thompkins Decl., ¶¶ 1, 3.)  Sarviss has submitted no evidence disputing these facts, and, instead, he makes these objections based on mere speculation.  Accordingly, Sarviss' objections are baseless and should be overruled.

| | |
|---|---|
| 12.    Although Sarviss was a California resident, GDIT did not hire him to | 12. Plaintiff denies this is undisputed. Opposing party's evidence:  See Sarviss |

| | |
|---|---|
| provide any services in California. (Thompkins Decl., ¶ 6.) | Declaration, ¶¶ 12-13. While in California awaiting deployment to Pakistan, Plaintiff spoke with John Landis, the GDIT Team Leader for his work in Pakistan, several times. Sarviss Depo., 123:2-4. Landis told Sarviss that a number of the items that they were required to have were not available in Pakistan. Landis told Sarviss that he should bring with him anything that he needed or that Plaintiff thought he might need. They discussed the need for survival equipment, water purification equipment, and medical supplies. Landis told Sarviss he would likely become ill from exposure to the local food and water. Landiss told Sarviss he would likely get diarrhea. In fact, while in Pakistan Sarviss twice had dysentery. Sarviss Depo., 113:13-20. Accordingly, Plaintiff went to his physician in Valencia, California, and secured a prescription for antibiotics and other drugs, and purchased those items at an Albertson's in California on June 6, 2007. A copy of the Pharmacy receipt is attached as Exhibit 2 to the Sarviss Decl. |

GDIT'S REPLY TO PL.'S STMT. OF GEN. ISS. IN OPP.
TO DEF. STMT. OF UNCONTR. F. & CONCL. OF LAW
CV08-1484 DDP (CWX)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The other drugs included medication for constipation and diarrhea.  During one or more of these June, 2007 discussions with Landis while Sarviss was in California, Landis told Sarviss that GDIT had survival vests for him in Pakistan, but that they were empty.  Accordingly, Plaintiff purchased a survival knife and other items for his survival vest, including bandages, signaling mirrors, flash lights, strobe lights, infrared lasers and, at a Sports Chalet in California, a water purifier.  Sarviss Depo., 113:21-116:2; 119:18-125:10.  At the time of deployment to Pakistan, it was Plaintiff's understanding that there were no U.S. military bases in the country and that there was no readily available Pakistani source for the above items.

In addition, while awaiting deployment from California, on or about June 1, 2007, Sarviss secured an International Driving Permit.  He understood that he was required to secure this permit as a condition of employment in Pakistan.  Sarviss Depo., 150:12-13.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH**

**NO. 12:** As an initial matter, Sarviss does not dispute that he was a California

resident. Sarviss appears to dispute that GDIT "did not hire him to provide any

services in California," but he offers no evidence to actually dispute GDIT's

reasons for hiring him. As discussed above, GDIT hired Sarviss to provide services

in Pakistan. He also attended pre-deployment trainings in North Carolina and

Texas. In fact, in Sarviss' own declaration submitted in connection with his

Opposition to GDIT's Motion, he claims that he was assigned to work in North

Carolina, Texas and Pakistan (and, conspicuously, makes no mention of being

assigned to work in California). (Sarviss Decl., ¶ 4.) Sarviss now alleges -- for the

first time -- that he spent time, at GDIT's direction, purchasing supplies and

equipment and securing an international driving permit in California, while he was

at home waiting for deployment, but his new and contradictory allegations do not

actually dispute the facts proffered by GDIT in Paragraph 12 -- simply that GDIT's

reasons for hiring Sarviss did not include providing any services in California.

Moreover, Sarviss' claim that he spent time in California working at GDIT's

direction directly contradicts his prior sworn deposition testimony. At his

deposition, Sarviss testified that he spent time in California preparing for his

deployment "on his own initiative." (Sarviss Depo. 114:24-115:21.) In fact, while

Sarviss now would have the Court believe that John Landis was speaking for GDIT

and requiring Sarviss to make such purchases, Sarviss testified to the contrary at his

deposition. According to Sarviss, he "did not have any communications with

GDIT, and [he was] not calling John Landis GDIT at all." (Id. 122:14-123:12.)

Landis, in fact, was acting as a "separate entity." (Id.) Sarviss cannot raise a

disputed issue of material fact by contradicting this prior testimony. See, e.g.,

Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3.

Furthermore, to the extent that Sarviss claims that "we were told to go get

- 17 -

international driver's licenses," he does not provide any evidence that he was required to obtain one in California.  Consequently, GDIT's material facts in Paragraph 12 remain undisputed.[2]

| 13.          Immediately after being hired, from May 14 to 18, 2007, Sarviss attended the U.S. Army Security Assistance Team Training Orientation Course ("SATTOC") at Fort Bragg, North Carolina.  (Sarviss Depo. 80:15-81:8; 83:18-20; Thompkins Decl., ¶ 7.) | 13.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
|---|---|
| 14.   GDIT's contract with the U.S. Government required Sarviss to complete this training before deploying to Pakistan.  (Sarviss Depo. 81:22-82:7; Thompkins Decl., ¶ 7.) | 14.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 15.   The training sessions, which included other trainees deploying to countries all over the world, addressed topics related to Sarviss' mission, including an orientation about Pakistan, counter-surveillance, counter-terrorism procedures, weapons training and hostage survival.  (Sarviss Depo. 81:9- | 15.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |

---

[2] To the extent that Sarviss purports to rely on Exhibit 2 to his declaration to raise any disputed issue of material fact, he cannot do so because that document was never produced to GDIT in response to its document requests.  (See GDIT's Evidentiary Objections to Sarviss Declaration.)

| 13; 88:17-24.) | |
|---|---|
| 16.     Sarviss was accompanied at SATTOC training by another GDIT trainee who was a resident of Pennsylvania.  (Thompkins Decl. ¶ 7.) | 16.  Pursuant to Rule 602 of the Federal Rules of Evidence, Plaintiff objects to the Thompkins Declaration in connection with these "facts" for there is no foundation that his evidence in this regard is from personal knowledge. Pursuant to Rule 802 of the Federal Rules of Evidence, the evidence should be excluded as hearsay. |

**GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 16:**  Sarviss fails to directly dispute the facts proffered by GDIT in Paragraph No. 16 with any evidence.  He merely objects to GDIT's evidence, but such objections (especially unfounded ones) alone are not sufficient to dispute the facts. Consequently, the facts alleged in Paragraph No. 16 remain undisputed.

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 16:**  Plaintiff's objection that the cited testimony from Thompkins' declaration lacks foundation and is hearsay should be overruled.  First, as discussed above, Thompkins had personal knowledge of the facts contained in his declaration, that he "oversaw the task for which Plaintiff John Sarviss was hired and the various administrative action(s) which pertain to his employment," and that he is "familiar with Mr. Sarviss' recruitment and the history of his employment at GDIT."  (Thompkins Decl., ¶¶ 1, 3.)  Sarviss has submitted no evidence disputing these facts, and, instead, he makes these objections based on mere speculation.  Second, Sarviss has failed to establish why Thompkins' statement in his declaration is hearsay -- it contains no out-of-court statement offered for the truth of the matter asserted.  Accordingly, Sarviss' objections are

GDIT'S REPLY TO PL.'S STMT. OF GEN. ISS. IN OPP.
TO DEF. STMT. OF UNCONTR. F. & CONCL. OF LAW
CV08-1484 DDP (CWX)

baseless and should be overruled.

| 17.    The SATTOC training lasted one work week, for eight hours each day. (Sarviss Depo. 83:18-22.) | 17.  Plaintiff denies this is undisputed. Opposing party's evidence:  See Sarviss Declaration, ¶8, 83:19-86:1. |
|---|---|

### GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH

**NO. 17:**  Sarviss' proffered evidence does not actually refute that the SATTOC training lasted one work week, for eight hours each day.  Plaintiff's testimony on this point is explicit:

"Q. Did that course [SATTOC] take a full work week?

"A. It was a full work week, yes.

"How many hours per day?

"A. Eight."  (Sarviss Depo. 83:18-22.)

Plaintiff's proffered evidence that he performed other tasks during that week, including filling out paperwork, getting shots and acquiring his Contractor Access Card describes activities outside of training and does not refute his testimony regarding the length and timing of the training course itself.  (See GDIT's Paragraph No. 18, where it is undisputed that Plaintiff alleges he performed these other tasks in addition to attending training.)  Consequently, GDIT's material facts in Paragraph No. 17 remain undisputed.

| 18.    Sarviss also alleges that he spent an additional 20 hours that week engaging in tasks to prepare for his deployment, including obtaining equipment at Pope Air Force Base, filling out additional paperwork, | 18.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
|---|---|

| | |
|---|---|
| receiving the necessary vaccinations, and obtaining his passport, visa and contractor access card. (Sarviss Depo. 83:23-84:16.) | |
| 19.    In late May 2007, shortly after completing the SATTOC training at Fort Bragg, Sarviss attended a five-day flight safety course in the Dallas/Fort Worth, Texas area. (Sarviss Depo. 103:4-10; 104:12-14.) | 19.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 20.    The course was provided by a third party and served as refresher training for flying the Bell 412 helicopter in which Sarviss would be training members of the Pakistani Air Force. (Sarviss Depo. 104:9-11; Thompkins Decl., ¶ 8.) This course was another condition of Sarviss' deployment to Pakistan. (Thompkins Decl., ¶ 8.) | 20.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 21.    Sarviss attended the training course from 8:00 a.m. to 5:00 p.m. each day, and was provided two 15-minute rest breaks and a 30-minute lunch break, for a total of eight hours per day. (Sarviss Depo. 105:7-106:7; 107:8-108:2.) | 21.  Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for there is no indication with respect to which training course reference is made. The defense assertion is irrelevant. |

## GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH

**NO. 21:** Sarviss fails to directly dispute the facts proffered by GDIT in Paragraph No. 21 with any evidence. He merely objects to GDIT's evidence, but such objections (especially unfounded ones) alone are not sufficient to dispute the facts. Consequently, the facts alleged in Paragraph No. 21 remain undisputed.

## GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTION

**TO PARAGRAPH NO. 21:** Plaintiff's objection that the facts proffered by GDIT in Paragraph No. 21 are irrelevant should be overruled. As an initial matter, the "training" discussed in Paragraph No. 21 is clearly the same training (i.e., the flight safety course in Texas) described in GDIT's preceding Paragraph Nos. 19 and 20. Moreover, such facts are entirely relevant to the issues in GDIT's Motion because, to the extent that Sarviss received meal and rest breaks while in Texas, he cannot state a claim for meal and rest periods during that time. Since he also is not claiming missed meal and rest periods in California, this means Sarviss must necessarily be attempting to apply California meal and rest period laws (and any statutory right of action arising from those laws) to his time working in North Carolina and Pakistan. Such arguments are directly related to GDIT's arguments that California wage and hour laws cannot be applied extraterritorially. Accordingly, the Court should overrule this unfounded objection.

| | |
|---|---|
| 22. Sarviss also alleges that he attended flight simulation exercises for another 1.5-2.5 hours at night. (Sarviss Depo. 108:3-7.) | 22. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 23. After completing the training course in Texas, Sarviss returned to his home in California to await deployment | 23. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |

| | |
|---|---|
| to Pakistan. (Id. 112:9-12.) He was there for approximately two weeks. (Sarviss Depo. 113:21-24.) | |
| 24.    On his own initiative, Sarviss spent time preparing for his deployment, which included packing his bags, conducting research on the Internet, and shopping for and purchasing supplies. GDIT did not ask him to perform any services during that time and that he did not purchase the supplies at GDIT's direction. (Sarviss Depo. 113:25-114:23; 115:7-21; 119:18-121:8; 122:4-123:12.) | 24. Plaintiff denies this is undisputed. Opposing party's evidence:  See Sarviss Declaration, ¶¶12-13. These activities were not at Sarviss own initiative, but rather, they were a direct result of his communications with GDIT. While in California awaiting deployment to Pakistan, Plaintiff spoke with John Landis, the GDIT Team Leader for his work in Pakistan, several times. Sarviss Depo., 123:2-4. Landis told Sarviss that a number of the items that they were required to have were not available in Pakistan.  Landis told Sarviss that he should bring with him anything that he needed or that Plaintiff thought he might need.  They discussed the need for survival equipment, water purification equipment, and medical supplies. Landis told Sarviss he would likely become ill from exposure to the local food and water.  Landis told Sarviss he would likely get diarrhea.  In fact, while in Pakistan Sarviss twice had dysentery. |

Sarviss Depo., 113:13-20.  Accordingly, Plaintiff went to his physician in Valencia, California, and secured a prescription for antibiotics and other drugs, and purchased those items at an Albertson's in California on June 6, 2007.  A copy of the Pharmacy receipt is attached as Exhibit 2 to the Sarviss Decl. The other drugs included medication for constipation and diarrhea.  During one or more of these June, 2007 discussions with Landis while Sarviss was in California, Landis told Sarviss that GDIT had survival vests for him in Pakistan, but that they were empty. Accordingly, Plaintiff purchased a survival knife and other items for his survival vest, including bandages, signaling mirrors, flash lights, strobe lights, infrared lasers and, at a Sports Chalet in California, a water purifier. Sarviss Depo., 113:21-116:2; 119:18-125:10.  At the time of deployment to Pakistan, it was Plaintiff's understanding that there were no U.S. military bases in the country and that there was no readily available Pakistani source for the above

items.

In addition, while awaiting deployment from California, on or about June 1, 2007, Sarviss secured an International Driving Permit.  He understood that he was required to secure this permit as a condition of employment in Pakistan.  Sarviss Depo., 150:12-13.  Sarviss reasonably interpreted his assignment to require that he Sarviss spend time in California preparing for his deployment, which included shopping for and purchasing supplies.  Based on a realistic interpretation of the employment contract and Plaintiff's communications with Landis, GDIT asked him to perform these services during that time.

### GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH

__NO. 24:__  Sarviss now contends that these activities "were not at Sarviss [sic] own initiative," but, as stated above, he cannot raise a disputed issue of material fact by contradicting his prior testimony.  See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3.  At his deposition Sarviss testified that while he spent time preparing for his deployment in California, he did this -- as he states in his own words: -- "on his own initiative."

> "I did this *on my own initiative* after conversations with
> the team leader, which I'm using as a real loose term,
> about stuff that was supposed to be there, that was
> supposed to be supplied by General Dynamics that wasn't.
> And I thought I'm not going to go over there and get
> caught with my tail between my legs." (Sarviss Depo.
> 114:24-115:21.)

In fact, while Sarviss <u>now</u> would have the Court believe that John Landis was speaking for GDIT and requiring Sarviss to make such purchases, Sarviss testified to the contrary at his deposition. According to Sarviss, he "did not have any communications with GDIT, and [he was] not calling John Landis GDIT at all." (<u>Id</u>. 122:14-123:12.) Landis, in fact, was acting as a "separate entity." (<u>Id</u>.) Furthermore, to the extent that Sarviss claims that "we were told to go get international driver's licenses," he does not provide any evidence that he was asked to get one while in California. Finally, whether Plaintiff "reasonably interpreted his assignment" to require preparation time or acted "[b]ased on a realistic interpretation of the employment contract and Plaintiff's communication with Landis" is speculative and immaterial to the facts set forth in Paragraph No. 24, and without evidentiary support. Consequently, GDIT's material facts in Paragraph No. 24 remain undisputed.

| | |
|---|---|
| 25.    Sarviss does not claim that he was denied any meal or rest periods during the time he spent in California. (Sarviss Depo. 115:22-116:8.) | 25. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 26.    GDIT did not ask him to work more than eight hours per day or 40 hours per week while he awaited deployment at home in California. | 26. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |

| | |
|---|---|
| (Sarviss Depo. 119:11-15.) | |
| 27.    During the first week of June 2007, Sarviss deployed to Pakistan, where he worked alongside GDIT pilots from other states, including Pennsylvania, Georgia, Alabama, New Jersey, Nevada, Kentucky, Florida and North Carolina.  (Sarviss Depo. 125:15-19; 138:1-23; Thompkins Decl., ¶ 9.) | 27. Pursuant to Rule 602 of the Federal Rules of Evidence, Plaintiff objects to the Thompkins Declaration in connection with these "facts" for there is no foundation that his evidence in this regard is from personal knowledge. Pursuant to Rule 802 of the Federal Rules of Evidence, the evidence should be excluded as hearsay |

**GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 27:**  Sarviss fails to dispute the facts proffered by GDIT in Paragraph No. 27 with any evidence.  He merely objects to GDIT's evidence, but such objections (especially unfounded ones) alone are not sufficient to dispute the facts.  In fact, Sarviss testified that he deployed to Pakistan in the first week of June, and that he worked with other GDIT pilots from Georgia, Pennsylvania and New Jersey. (Sarviss Depo. 125:15-19; 138:1-23.)  Consequently, the facts alleged in Paragraph No. 27 remain undisputed.

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 27:**  Plaintiff's objections that the facts proffered by GDIT in Paragraph No. 27 lack foundation and are hearsay should be overruled.  First, as discussed above, Thompkins had personal knowledge of the facts contained in his declaration, that he "oversaw the task for which Plaintiff John Sarviss was hired and the various administrative action(s) which pertain to his employment," and that he was "familiar with Mr. Sarviss' recruitment and the history of his employment at GDIT."  (Thompkins Decl., ¶¶ 1, 3.)  Second, Sarviss has failed to establish why Thompkins' statement in his declaration is hearsay -- the

statement does not include an out-of-court statement by a declarant offer for the truth of the matter asserted. Accordingly, Sarviss' objections are baseless and should be overruled.

| | |
|---|---|
| 28. Sarviss' primary duty was to train Pakistani Air Force helicopter pilots to conduct night flight operations using NVGs. (Sarviss Depo. 51:8-12; Thompkins Decl., ¶¶ 5-6.) | 28. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶¶ 3, 17. Indeed, although Plaintiff initially understood that his job was to train "Pakistani helicopter pilots in night vision combat tactics," (Sarviss Depo. 51:10-11), in fact, most of the actual training was done on the ground, by another GDIT employee, John Landis. Plaintiff's role was merely to take over the helicopter as pilot in the event of a problem, serving as a co-pilot or crewmember while an experienced Pakistani helicopter pilot had control of the craft, practicing flying with night vision goggles. Most of the time, Plaintiff was a crewmember and a Pakistani was the pilot. "My primary job in Pakistan was to keep myself and my co-pilot alive because of their lack of knowledge on how to operate an aircraft at night." Sarviss Depo., 128:1-8. Pursuant to Rule 602 of the Federal |

|  | Rules of Evidence, Plaintiff objects to the Thompkins Declaration in connection with these "facts" for there is no foundation that his evidence in this regard is from personal knowledge. Pursuant to Rule 802 of the Federal Rules of Evidence, the evidence should be excluded as hearsay. |
|---|---|

### **GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH**

**NO. 28:**   Contrary to his deposition testimony, Sarviss now appears, in his recently filed declaration, to be disputing that he was training Pakistani Air Force pilots. Under the "sham" affidavit rule, however, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment.  See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3.

Sarviss admitted at his deposition that the mission to which he was assigned was "training Pakistani helicopter pilots in night vision goggle combat tactics in support of the global war on terror."  (Sarviss Depo. 51:8-12.)  Sarviss also admitted that he performed the duties consistent with that mission.  Specifically, Sarviss made the following admissions at his deposition regarding his job duties in Pakistan:

- Sarviss was the first pilot to come to Pakistan to train students.

> "Q.  You were the first pilot to come [to Multan, Pakistan] and to be training students and to have met Lieutenant Commander Shahid's approval?

> "A. That's correct.

> "Q. So you were the first person to do all three of those?

> "A. 'I was the first person to come here and within one week of being

1    here was <u>actually training students</u> and had met Lieutenant Colonel
2    Shahid's approval.' That is an all-encompassing statement. <u>And, yes,
     it's true.</u>" (<u>Id.</u> 209:19-210:10 (emphasis added).)

3    • Each pilot trainee had differing levels of experience, skills and
       knowledge, and Sarviss was assigned to teach a different pilot trainee
4      each night, which prevented him following "a natural progression of
       **training.**" (<u>Id.</u> 157:11-158:10 (emphasis added).)

5    • He attended a 5-day pre-deployment flight safety course that served as
6      a refresher for flying the Bell 412 helicopter in which Sarviss was
       **training** members of the Pakistani Air Force. (<u>Id.</u> 103:4-10; 104:9-14);
7      <u>see also</u> Sarviss' Statement of Genuine Issues in Opposition to this
       Motion, ¶¶ 19-20 (responding to these undisputed issues as set forth by
8      GDIT in its Separate Statement: "Plaintiff agrees this is undisputed for
       purpose of the defense Motion for Summary Judgment.)

9    • He evaluated each of his trainees' skill level. (<u>Id.</u> 157:11-158:16.)

10   • He determined what each trainee could and could not do, and tailored
11     his mission plans based on his independent evaluation of each student's
       skills and abilities. (<u>Id.</u> 158:12-16; 158:22-163:5; 185:8-24.)

12   • He demonstrated the skills he was teaching. (<u>Id.</u> 161:9-15.)

13   • He supervised his trainees while they flew the helicopter. (<u>Id.</u> 158:22-
14     163:5; 185:25-186:15.)

15   • He constantly monitored the helicopter's instruments. (<u>Id.</u> 185:25-
       186:15.)
16
     • He checked to ensure that the trainee was interpreting the terrain
17     correctly. (<u>Id.</u> 185:25-186:15.)

18   • He adjusted the mission profile based on what happened during the
       flight. (<u>Id.</u> 185:8-24.)
19
     • He took the controls away from the trainee when *he* decided it was
20     necessary to do so solely based on his evaluation of the situation. (<u>Id.</u>
       158:12-160:1; 181:14-183:15; 185:25-186:15.)
21
     • He decided if and when the trainee was ready to resume flying the
22     helicopter, whether to return the controls to him, and whether to
       continue the mission or return to base. (<u>Id.</u> 157:11-158:16; 158:22-
23     163:5; 185:8-24.)

24   • He responded to being asked: "And after you **taught** the[ students] you
       had a sense of where they were in the proficiency spectrum?" by
25     testifying "As well as I could" -- *not* that he did not train the students.
       (<u>Id.</u> 158:12-21 (emphasis added).)
26
     • He relied extensively upon his 30 years of experience and own training
27     in conducting the flight training. (<u>Id.</u> 130:6-17; 131:8-132:8.)

28   • He, on his own initiative, instituted a rule that the pilot must return the

helicopter with 700 pounds of fuel.  (Id. 158:12-160:1; 184:6-186:5.)

- He prepared instrument approaches for "divert" fields.  (Id. 199:14-200:17.)

- He located a survival escape and evasion area, and created and put into place a survival escape and evasion plan.  (Id. 199:14-200:17.)

- He was made the SIP -- who is responsible for ensuring that flight standards were consistent for all of the Instructor Pilots -- for the *entire* squadron, and conducted 10 "captain check rides" to evaluate and certify a trainee as an aircraft commander.  (Id. 162:20-163:5; 165:20-166:9.)

- He wrote in an email that he and his colleague -- *not* GDIT -- pull[ed the Pakistan mission] off.  (Id. 227:14-228:25, Ex. 13.)

It is clear from the above deposition testimony that Sarviss was "training students" while in Pakistan.  See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2.  Sarviss cannot dispute this fact through his recently submitted declaration by inconsistently claiming that he was merely a "copilot" or "crewmember." Consequently, GDIT's material facts in Paragraph No. 28 remains undisputed.

## GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 28: Plaintiff's objections that the facts

proffered by GDIT in Paragraph No. 28 lack foundation and are hearsay should be overruled.  First, as discussed above, Thompkins had personal knowledge of the facts contained in his declaration, that he "oversaw the task for which Plaintiff John Sarviss was hired and the various administrative action(s) which pertain to his employment," and he is "familiar with Mr. Sarviss' recruitment and the history of his employment at GDIT."  (Thompkins Decl., ¶¶ 1, 3.)  Second, Sarviss has failed to establish why Thompkins' statement in his declaration is hearsay -- it does not offer an out-of-court statement for the truth of the matter asserted.  Accordingly, Sarviss' objections are baseless and should be overruled.

| 29.  While working in Pakistan, | 29.  Plaintiff denies this is undisputed. |
| Sarviss was assigned to teach a different | Opposing party's evidence: See Sarviss |

| | |
|---|---|
| student each night, and each trainee had differing levels of experience, skills and knowledge. (Sarviss Depo. 157:11-158:10.) | Declaration, ¶¶ 3, 17. Indeed, although Plaintiff initially understood that his job was to train "Pakistani helicopter pilots in night vision combat tactics," (Sarviss Depo. 51:10-11), in fact, most of the actual training was done on the ground, by another GDIT employee, John Landis. Plaintiff's role was merely to take over the helicopter as pilot in the event of a problem, serving as a co-pilot or crewmember while an experienced Pakistani helicopter pilot had control of the craft, practicing flying with night vision goggles. Most of the time, Plaintiff was a crewmember and a Pakistani was the pilot. "My primary job in Pakistan was to keep myself and my co-pilot alive because of their lack of knowledge on how to operate an aircraft at night." Sarviss Depo., 128:1-8. |

### **GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 29:** Sarviss' proffered evidence does not and cannot dispute these facts, which are based on his own deposition testimony. Paragraph No. 29 alleges two facts -- that "Sarviss was assigned to teach a different student each night," and that "each trainee had differing levels of experience, skills and knowledge." The evidence submitted by Sarviss fails to dispute either fact. To the extent Sarviss disputes that he did not "teach" any Pakistani pilots, he contradicts his substantial prior

deposition testimony.  As discussed above, under the "sham" affidavit rule, Sarviss is bound by his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment.  See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. Indeed, Sarviss testified at his deposition:

> "[W]e would go out with, you know, whatever student we happened to get assigned that night.  It was a different one every night.  It was never one that I could start and finish with, you know, and follow a natural progression of training with. ... I have absolutely no idea what their skill level is until I go out with them and they scare the living hell out of me.  And then I kind of know what they can do and what they can't do and have to pick it up from there."

> ...

> "Q. So you would -- informally, but you would sort of evaluate where they were skill-wise and go from there?

> "A. Yeah.  I would put the goggles on them and give them the controls.  Obviously if we took off sideways, I knew we had to start from scratch.

> "Q. And after you taught them you had a sense of where they were in the proficiency spectrum?

> "A. As well as I could.  We had a limited amount of time to work with them and a limited amount of moon cycles." (Id. 157:11-158:10; 158:12-21 (emphasis added).)

It is clear from this deposition testimony that Sarviss was "training students" while in Pakistan.  See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. Sarviss cannot now dispute this fact through his recently submitted declaration by inconsistently claiming that he was merely a "copilot" or "crewmember." Consequently, GDIT's material facts in Paragraph No. 29 remains undisputed.

| | |
|---|---|
| 30.     During each flight with each student, Sarviss evaluated the trainee's skill level, determined what the trainee | 30. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶¶ 3, 17.  Indeed, although |

could and could not do, and adjusted the mission profile based on what happened during the flight, including continuing the flight training (or terminating it) based on Sarviss' independent discretion and judgment. (Sarviss Depo. 157:11-158:16; 158:22-163:5; 185:8-24.)

Plaintiff initially understood that his job was to train "Pakistani helicopter pilots in night vision combat tactics," (Sarviss Depo. 51:10-11), in fact, most of the actual training was done on the ground, by another GDIT employee, John Landis. Plaintiff's role was merely to take over the helicopter as pilot in the event of a problem, serving as a co-pilot or crewmember while an experienced Pakistani helicopter pilot had control of the craft, practicing flying with night vision goggles. Most of the time, Plaintiff was a crewmember and a Pakistani was the pilot. "My primary job in Pakistan was to keep myself and my co-pilot alive because of their lack of knowledge on how to operate an aircraft at night." Sarviss Depo., 128:1-8. The defense omits reference to Sarviss' testimony that "[w]e had a limited amount of time to work with them and a limited amount of moon cycles." Id., 158:19-21. Plaintiff's objection to the question at 157:14-15 should be sustained.

- 34 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH

**NO. 30:** Sarviss' proffered evidence does not and cannot dispute these facts, which are based on his own deposition testimony. Sarviss does not dispute that he used his independent discretion and judgment. To the extent that Sarviss disputes that he did not "train" any Pakistani pilots, he contradicts substantial prior deposition testimony. As discussed above, under the "sham" affidavit rule, Sarviss is bound by his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. Indeed, Sarviss testified at his deposition:

> "[W]e would go out with, you know, whatever student we happened to get assigned that night. It was a different one every night. It was never one that I could start and finish with, you know, and follow a natural <u>progression of training</u> with. … I have absolutely no idea what their skill level is until I go out with them and they scare the living hell out of me. And then I kind of know what they can do and what they can't do and have to pick it up from there." (<u>Id</u>. 157:11-158:10; 158:12-21 (emphasis added).)

In addition, Plaintiff testified that, as necessary, he would "weed out the ones" he thought would be best able to learn some about using the NVGs. (<u>Id</u>.158:22-163:5; 185:8-24.) It is clear from the above deposition testimony that Sarviss was "training students" while in Pakistan. <u>See also</u> GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. Sarviss cannot now dispute this fact through his recently submitted declaration by inconsistently claiming that he was merely a "copilot" or "crewmember." Consequently, GDIT's material facts in Paragraph No. 30 remains undisputed.

### GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY

### OBJECTIONS TO PARAGRAPH NO. 30: Sarviss appears to be reasserting his

objections made by his counsel during his deposition, but such objections are unfounded and should be overruled. During Sarviss' deposition, his counsel

objected to the form of the question on the grounds that it "calls for a narrative, overbroad, assumes facts not in evidence, argumentative." None of these objections change the answer provided by Sarviss, which he cannot now dispute. Sarviss understood the question and answered it. He has provided no explanation whatsoever as to why the question affected his answer to the question. Accordingly, the Court should overrule his objections.

| | |
|---|---|
| 31.    During a training flight, Sarviss typically would put NVGs on the trainee and give him the controls to the helicopter. (Sarviss Depo. 158:12-160:1.) Sarviss constantly monitored the helicopter's instruments, and took the controls away from the pilot if necessary. Sarviss also checked to ensure that the pilot trainee was interpreting the terrain correctly through the NVG. (Sarviss Depo. 158:12-160:1; 185:25-186:15.) | 31. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
| 32.    While in Pakistan, Sarviss, on his own initiative, instituted a rule that the pilot needed to return the helicopter with 700 pounds of fuel remaining, and he would adjust mission profiles accordingly. (Sarviss Depo. 158:12-160:1; 185:25-186:15.) *Sarviss* couched his rule in terms of life and death: | 32. Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for there is no indication with respect to what sort of "rule" was involved. Was this "rule" adopted by the Pakistani military or what this pure hyperbole or only applied when Sarviss was flying. The defense assertion is |

| | |
|---|---|
| "And that wasn't a rule of the Pakistan [sic]. That was something I instituted, because they had some people that got killed just before I got over there. And I wasn't going to stand for any more of that nonsense because they weren't qualified to be flying the aircraft and they got caught in a sand storm and they got dead…. And I didn't want to see anybody dead over there any more than needed to be. So that's what I did." (Sarviss Depo. 184:25-185:7.) | irrelevant. |

**GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 32:** Sarviss fails to directly dispute the facts proffered by GDIT in Paragraph No. 32 with any evidence. He merely objects to GDIT's evidence, but such objections (especially unfounded ones) alone are not sufficient to dispute the facts. In fact, Sarviss testified to the specific facts set forth in Paragraph No. 32, and, indeed, he cannot now dispute that testimony. Consequently, the facts alleged in Paragraph No. 32 remain undisputed.

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 32:** Plaintiff's relevancy objection should be overruled. GDIT's evidence in support of this fact is relevant to a determination of his exempt status because it shows, for example, Plaintiff's job duties and the exercise of discretion. Furthermore, Plaintiff's objection that "there is no indication with respect to what sort of 'rule' was involved" is meritless. Plaintiff's testimony at deposition is clear that he himself "instituted" the rule, and it was not "a rule of the Pakistan [sic]." (Sarviss Depo. 184:25-185:7.)

Accordingly, the Court should overrule this objection.

| | |
|---|---|
| 33.    Sarviss also prepared instrument approaches for "divert" fields; located a survival escape and evasion area, and created and put into place a plan; and conducted approximately 10 "captain check rides," during which he would evaluate and certify a trainee as an aircraft commander.  (Sarviss Depo. 165:20-166:9, 199:22-200:6; 200:12-16.) | 33.    Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for there is no indication with respect to the significance of these matters.  The defense assertion is irrelevant. |

**GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 33:** Sarviss fails to directly dispute the facts proffered by GDIT in Paragraph No. 33 with any evidence.  He merely objects to GDIT's evidence on the grounds of relevance, but such objections (especially unfounded ones) alone are not sufficient to dispute the facts, which are based on his own testimony.  Consequently, the facts alleged in Paragraph No. 33 remain undisputed.

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 33:** Plaintiff's relevancy objection should be overruled.  GDIT's evidence in support of this fact is relevant to a determination of his exempt status because it shows, for example, Plaintiff's job duties and his exercise of discretion.  Accordingly, the Court should overrule this objection.

| | |
|---|---|
| 34.    Sarviss believed that the purported team leader, GDIT employee John | 34.    Plaintiff denies this is undisputed. Opposing party's evidence:  See Sarviss |

Landis, was not qualified to be an instructor pilot because he had failed a "check ride" with the Pakistani Base Commander, Lieutenant Colonel Shahid. (Sarviss Depo. 133:14-134:14; 161:16-163:22.) Sarviss "could not rely on Landis" or the Base Commander because Landis "was not qualified to carry [Sarviss'] helmet bag," and the Commander "wasn't qualified to fly the aircraft or fly with [NVGs]." (Sarviss Depo. 162:20-163:5, 164:4-165:10.) Because of this lack of qualifications, Sarviss claims the Pakistani Air Force made him the SIP for the entire squadron. (Sarviss Depo. 162:20-163:5.)

Declaration, ¶18. Sarviss testified that he was "n[o]t put . . . in charge of GDIT" in Multan. Sarviss Depo., 163:2-13. A new Pakistani commander was assigned to the base in Multan and, at his request and as "a favor that was asked by the Pakistani commander" Sarviss assisted him in evaluating some of the Pakistani helicopter pilots. Id. 165:20-166:9. The Pakistani commander "asked Landis to ask me if I would do it." Id., 166:10-13. This activity was beyond the scope of Plaintiff's assignment and beyond the scope of what GDIT was to do in Multan, but Sarviss agreed to help as a favor. The activity was entirely incidental to Plaintiff's job, and took relatively little time. Indeed, the defense misquotes the testimony, in which Sarviss was speaking of the SIP for the 25th Squadron, not for GDIT. Sarviss Depo. 162:20-163:5, at 163:3-4. Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for the fact that an employee thinks his superior is

incompetent plays no role in determining the employee's status as exempt or non-exempt. The defense assertion is irrelevant.

**GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 34:** Plaintiff's proffered evidence does not actually dispute any of the facts in Paragraph No. 34. Because all of these facts are based on Sarviss' own deposition testimony, he cannot now dispute them. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. Indeed, Sarviss testified explicitly that "I couldn't rely on John Landis because John Landis wasn't even signed off to be an instructor pilot by Lieutenant Colonel Shahid, who was the base commander, because he failed the check ride with him," (Sarviss Depo. 162:19-163:5), and that Landis "was not qualified to carry [Plaintiff's] helmet bag." (Id. 165:2-10.) He also testified that "[a]ll I can tell you is that the new commander that came in wasn't qualified to fly the aircraft or flight on night vision goggles, so he needed all the help that he could get." (Id. 164:4-12.) In light of Landis' and the new commander's lack of skills, Plaintiff was told "you're the only one with experience here. You go out and fly these things," and was "made the SIP for the 25th squadron." (Id. 162:19-163:5.) Indeed, Sarviss testified that while Lieutenant Shahid "couldn't put [Sarviss] in charge of GDIT, ... he certainly put me in charge as far as they gave me a set of Pakistani wings and a Pakistani name tag and a patch and said you're the man." (Id. at 163:8-16.) Consequently, GDIT's material facts in Paragraph No. 34 remains undisputed.

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS TO PARAGRAPH NO. 34:** Sarviss' relevancy objection should be overruled. Sarviss contends that the fact that "an employee thinks his superior is incompetent plays no role in determining the employee's status as exempt or non-

- 40 -

exempt." Sarviss, however, misses the point. Such facts are relevant because Sarviss claims he had to assume some of the duties of his allegedly incompetent supervisor. Because it relates to, for example, Sarviss' job duties and his exercise of independent judgment and discretion, GDIT's evidence in support of this fact is relevant to a determination of his exempt status. Accordingly, the Court should overrule this objection.

| | |
|---|---|
| 35.    Sarviss also wrote to one of GDIT's competitors, Camber, that "[GDIT] didn't pull [the Pakistan mission] off. We did." By that, Sarviss meant himself and his colleague, Ken Lazorchak. (Sarviss Depo. 227:14-228:25, Ex. 13.) | 35. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for there is no indication with respect to the significance of these matters. The defense assertion is irrelevant. |

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTION TO PARAGRAPH NO. 35:**

Plaintiff's relevance objection should be overruled. Sarviss argues that "there is no indication with respect to the significance of these matters." Such indication, however, is not necessary to establish relevance. This evidence is relevant because it directly relates to Sarviss' job duties performed for GDIT and to his exempt status. Accordingly, the Court should overrule Sarviss' objection.

| | |
|---|---|
| 36.    Sarviss was required to rely extensively upon his 30-plus years of military and civilian experience and training to conduct NVG flight training. | 36. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶ ¶ 3, 17. Indeed, although Plaintiff initially understood that his job |

(Sarviss Depo. 130:6-17; 131:8-132:8.)
Sarviss testified that he routinely made
"life or death" decisions.  (Sarviss Depo.
128:1-130:17; 184:25-185:7.)

was to train "Pakistani helicopter pilots
in night vision combat tactics," (Sarviss
Depo. 51:10-11), in fact, most of the
actual training was done on the ground,
by another GDIT employee, John
Landis.  Plaintiff's role was merely to
take over the helicopter as pilot in the
event of a problem, serving as a co-pilot
or crewmember while an experienced
Pakistani helicopter pilot had control of
the craft, practicing flying with night
vision goggles.  Most of the time,
Plaintiff was a crewmember and a
Pakistani was the pilot.   "My primary
job in Pakistan was to keep myself and
my co-pilot alive because of their lack of
knowledge on how to operate an aircraft
at night."  Sarviss Depo., 128:1-8.
While deployed by GDIT in Pakistan,
Sarviss worked with experienced
Pakistani helicopter pilots.  Sarviss did
not teach them how to fly helicopters.
Before he left for Pakistan, Sarviss was
advised by GDIT that each of these
Pakistani helicopter pilots had at least
2000 hours of helicopter flight
experience.  Sarviss described this in his

deposition. Sarviss Depo., 56:16-25. Although he later learned that this was not true, each of the Pakistanis knew how to fly a helicopter before Sarviss met them. John Landis of GDIT was responsible for training the Pakistani helicopter pilots on basic night vision flying techniques. Each of the Pakistani helicopter pilots was provided with written materials to study and each was required to attend ground classroom sessions regarding night vision flying techniques. Sarviss Depo., 132:9-134:14; 157:11-25. During his work in Pakistan, Sarviss acted as a co-pilot or crewmember for the experienced Pakistani helicopter pilot, ready to take the controls, if necessary. Sarviss Depo., 158:12-160:1. This is routine work for individuals who are experienced in helicopters, routine manual work for which those in the industry ordinarily are paid overtime wages.

## GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO.

**36:** Plaintiff's proffered evidence does not actually dispute the facts alleged in Paragraph No. 36. None of the evidence proffered by Sarviss disputes that he:

(1) relied upon his 30-plus years of military and civilian experience; and (2) routinely made "life or death" decisions. Indeed, Plaintiff's testimony is explicit; at deposition, Sarviss testified that he "drew on a lot of experience" to train the Pakistani pilots, including his "30 years of civilian experience and, for lack of a better term, pulling it out of my rear end." (Sarviss Depo. 128:10-21; 130:12-14.) He also described the experience of making a life or death decision, testifying that "when you start to get the metallic taste in your mouth that you get just before you die you start coming up with answers real quick." (Sarviss Depo. 130:12-17.) To the extent Sarviss submits the above evidence to dispute that he did not "train" or "teach" Pakistani pilots, he contradicts his substantial prior deposition testimony. As discussed above, under the "sham" affidavit rule, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. It is clear from Sarviss' deposition testimony that he was "training students" while in Pakistan. See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. Consequently, GDIT's material facts in Paragraph No. 36 remain undisputed.

| 37.   On July 17, 2007, Sarviss tendered his resignation to GDIT. On or about August 7, 2007, Sarviss submitted an amended resignation letter seeking to move his last date of employment to September 4, 2007. (Sarviss Depo. 230:8-231:14; 233:20-235:10 & Exs. 14 & 15; Thompkins Decl., ¶ 10.) | 37.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. |
|---|---|