| 38. Sarviss returned to the United States, and separated from employment with GDIT effective September 4, 2007. (Sarviss Depo. 144:16-23; 239:16-19; Thompkins Decl., ¶ 10.) | 38. Plaintiff denies this is undisputed. Opposing party's evidence: See Sarviss Declaration, ¶ 21. Plaintiff's final wage statement was dated October 18, 2007, long after he had been terminated. Thompkins Decl., Ex. B (JS-000001545). His final regular paycheck was dated September 20, 2007, long after his last day of work, the date on which he was returned to California, on or about September 13, 2007. Id. (JS-000001544). According to documentation he received from GDIT entitled "Important Information for Employees Separating from GDIT Corporation": |
|---|---|

> Your last day worked is your termination date. Any accrued, unused General Leave to which you may be entitled will automatically be included in your final check; conversely, where permitted by law, your final check will reflect deductions for any used but not accrued general leave.

|  | Your final paycheck will be paid as either a 'live' check or 'direct deposit' depending upon your payroll elections at time of payout. Final paychecks will be issued on the next regularly scheduled pay date, unless otherwise required by state law. |
|  | Exhibit 3 to Sarviss Decl. |

## GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO. 38:

Sarviss does not dispute that he returned to the United States. Sarviss appears to dispute that he separated from employment on the exact date of September 4, 2007. First, whether GDIT terminated Sarviss' employment on September 4, 2007, or as Sarviss now alleges, September 13, 2007, is immaterial to any issue in GDIT's Motion. Moreover, Sarviss cannot now dispute that his separation from employment was effective September 4, 2007, because his prior sworn deposition testimony concurred with this fact. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. During deposition, when asked when he separated from GDIT, Plaintiff replied "Well, if you go back to the document that you had about my separation, they actually filled it out on the 12th when I was there but I separated on the 2nd or the 3rd [of September]." (Sarviss Depo. 144:16-23.) In addition, when asked at deposition about a document which indicated "[u]p in the upper -- well, towards the right it says separation date 9/4/07. Last day worked is separation date. Was that your last day worked, 9/4/07?," Sarviss replied "I believe so." (Id. 239:16-19.) Plaintiff's other proffered evidence

- 46 -

regarding wage statements is irrelevant and immaterial to this fact and does not dispute the core of the fact as stated. Consequently, GDIT's material facts in Paragraph No. 38 remain undisputed.

| | |
|---|---|
| 39.    During his four months of employment with Defendant, GDIT paid Sarviss more than $68,000.00 in compensation.  Specifically, GDIT paid Sarviss an annual salary of $83,200.00, paid biweekly at $3,200.00 per pay period.  (Sarviss Depo. 65:15-67:3; 67:15-68:4; 69:6-20; 140:14-141:13 & Ex. 6; Thompkins Decl., ¶ 11 & Ex. B.) GDIT paid Sarviss his base salary while he attended training in North Carolina and Texas, and also while he was at home in California waiting to deploy to Pakistan.  (Sarviss Depo. 116:13-23; Thompkins Decl., ¶ 11.) | 39.  Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment.  Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for there is no indication with respect to the significance of these matters.  The defense assertion is irrelevant, apart from the admission that Sarviss had an annual salary of only $83,200, far less than $100,000. |

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTION TO PARAGRAPH NO. 39:** Plaintiff's relevance objection should be overruled. Sarviss argues that "there is no indication with respect to the significance of these matters." Such indication, however, is not necessary to establish relevance. This evidence is relevant because it directly relates to Sarviss' exempt status and GDIT's argument that he: (1) was a highly compensated employee under the FLSA; and (2) meets the minimum salary requirements for other exemptions under both the FLSA and California law. Accordingly, the Court should overrule Sarviss' objection.

| | |
|---|---|
| 40.    While working in Pakistan, in addition to his base salary, GDIT paid Sarviss an additional 25% of his base salary for "Danger Pay," plus an additional 20% "Hardship Differential." (Sarviss Depo. 65:15-67:3; 72:10-14 & Ex. 6; Thompkins Decl., ¶ 11 & Ex. B.) | 40.  Plaintiff denies this is undisputed. Opposing party's evidence:  this Court may take judicial notice of the fact that Plaintiff's Danger Pay and Hardship Differential were bonuses, computed on the assumption that he did not work any overtime and/or that he was not eligible for overtime. |

## GDIT'S REPLY TO PLAINTIFF'S RESPONSE TO PARAGRAPH NO.

**40:** Sarviss does not dispute the facts in Paragraph 40 with any contrary evidence. Rather, he simply requests that the Court take judicial notice of the fact that "Plaintiff's Danger Pay and Hardship Differential were bonuses, computed on the assumption that he did not work any overtime and/or that he was not eligible for overtime." Under Federal Rules of Evidence Rule 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Whether or not such facts are subject to reasonable dispute, Sarviss has met neither of these requirements under Rule 201. He has failed to establish that any of the facts he proffers are undisputed, are generally known in this jurisdiction and/or capable of accurate and ready determination. Accordingly, taking judicial notice of such facts is improper, and the Court should deny this request because such facts are not of the type that can be judicially noticed. More importantly, however, whether Plaintiff's Danger Pay and Hardship Differential were bonuses is irrelevant to the "highly-compensated" employee analysis. Rather, the salient issue is whether such amounts were "discretionary" under the

regulations. *See* 29 C.F.R. 541.601(b)(1). Because Sarviss has failed to provide any evidence that these amounts were discretionary, he has failed to raise any issue of material facts. Consequently, GDIT's material facts in Paragraph No. 40 remain undisputed.

| | |
|---|---|
| 41. GDIT also paid Sarviss a full $30,000.00 contractual "completion" bonus (Sarviss Depo. at 144:13-15 & Ex. 6). | 41. Plaintiff agrees this is undisputed for purposes of the defense Motion for Summary Judgment. Pursuant to Rule 402 of the Federal Rules of Evidence, Plaintiff objects to these "facts" for there is no indication with respect to the significance of these matters. The defense assertion is irrelevant, apart from the admission that Sarviss had an annual salary of only $83,200, far less than $100,000. |

**GDIT'S RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTION TO PARAGRAPH NO. 41:** Plaintiff's relevancy objection should be overruled. Sarviss argues that "there is no indication with respect to the significance of these matters." Such indication, however, is not necessary to establish relevance. In fact, this evidence is relevant because it directly relates to Sarviss' exempt status and GDIT's argument that he: (1) was a highly compensated employee under the FLSA; and (2) meets the minimum salary requirements for other exemptions under both the FLSA and California law. Accordingly, the Court should overrule Sarviss' objection.

## ADDITIONAL GENUINE ISSUES OF FACT

| Plaintiff's "Additional Genuine Issues of Fact" | GDIT'S Responses to Plaintiff's "Additional Genuine Issues of Fact"[3] |
|---|---|
| (1)    This Court may take judicial notice that the legal name of the Defendant is GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., rather than GENERAL DYNAMICS INFORMATION TECHNOLOGY. | Undisputed. |
| (2)    Sarviss worked for Defendant from in or about May 2007 through September 2007. | Undisputed. |
| Sarviss learned of the possible work with Defendant from an internet solicitation he received at his California home in or about April of 2007.  The solicitation is attached to the Declaration of Michael Garrison in Support of Defendant General Dynamics Information Technology's Motion for Summary Judgment as Exhibit A (p. 170)("Garrison Decl.") | Undisputed. |

---

[3] To the extent that GDIT states that any of Plaintiff's Additional Genuine Issues of Fact are undisputed, GDIT makes that admission only for purposes of this Motion.

1

2

3

As reflected in his deposition, Sarviss understood that the solicitation "was seeking qualified helicopter pilots to support aviation requirements," rather than individuals to train others to fly helicopters, as indicated in the defense submission in support of their Motion for Summary Judgment.  Relevant portions of his deposition in this case are attached hereto as Exhibit 1.  See Sarviss Depo., 47:6-20, at 19-20.  Sarviss Decl., ¶2.

Immaterial, irrelevant.  Even if Sarviss' evidence supported the fact stated -- and, as discussed below, it does not -- Plaintiff's interpretation of the solicitation is neither material nor relevant for purposes of GDIT's Motion. GDIT also objects to the extent Plaintiff's "fact" mischaracterizes his testimony.  In response to a question about the job title of the individual Plaintiff contacted in connection with the solicitation he saw, Plaintiff replied only that "[t]he job title was seeking qualified helicopter pilots to support aviation requirements."  Sarviss Depo. 47:6-20.  Plaintiff's cited testimony does not address whether he believed the solicitation sought individuals to train others to fly helicopters.  Defendant also objects to the extent this "fact" mischaracterizes GDIT's motion as indicating that Plaintiff was hired to train others to fly helicopters; as discussed above, Plaintiff cannot dispute that he was hired by GDIT, that the mission was "training Pakistani

|  | helicopter pilots in night vision goggle combat tactics in support of the global war on terror," and that he did train Pakistani pilots to fly helicopters at night using NVGs. Defendant further objects to this "fact" as irrelevant under Federal Rules of Evidence 402 because it is immaterial to GDIT's Motion. |
|---|---|
| (3)     Indeed, although Sarviss initially understood that his job was to train "Pakistani helicopter pilots in night vision combat tactics," (Sarviss Depo. 51:10-11), in fact, most of the actual training was done on the ground, by Mr. Landis. His role was merely to take over the helicopter as pilot in the event of a problem, serving as a co-pilot or crewmember while an experienced Pakistani helicopter pilot had control of the craft, practicing flying with night vision goggles. Most of the time, Sarviss was a crewmember and a Pakistani was the pilot. "My primary job in Pakistan was to keep myself and my co-pilot alive because of their lack of knowledge on how to operate an aircraft at night." Sarviss Depo., 128:1-8. | This is not an additional genuine issue of fact as Sarviss asserts but evidence in direct response to the issues of fact initially raised by GDIT.<br><br>Contradicts earlier testimony. As discussed above, under the "sham" affidavit rule, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. It is clear from the Sarviss' deposition testimony that he was "training students" while in Pakistan. (Sarviss Depo. 51:8-12; 130:6-17; 131:8-132:8; 157:11-166:20; 181:14-186:15; 199:14-200:17; 209:19- |

| | |
|---|---|
| Sarviss Decl., ¶3. | 210:10.)  See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. |
| (4)    Sarviss was assigned to work in North Carolina, Texas and Pakistan as a full time employee of General Dynamics Information Technology, Inc. ("GDIT"). | Undisputed. |
| His employment responsibilities focused on acting as a helicopter pilot, as and when required. | Contradicts earlier testimony.  As discussed above, under the "sham" affidavit rule, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment.  See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3.  It is clear from the Sarviss' deposition testimony that he was "training students" while in Pakistan. (Sarviss Depo. 51:8-12; 103:4-10; 104:9-14; 130:6-17; 131:8-132:8; 157:11-166:20; 181:14-186:15; 199:14-200:17; 209:19-210:10; 227:14-228:25, Ex. 13.)  See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. |

| | |
|---|---|
| A true and accurate copy of his job assignment offer from GDIT is attached to the April 6, 2009, Declaration of Kevin L. Thompkins in Support of Defendant General Dynamics Information Technology's Motion for Summary Judgment as Exhibit A ("Thompkins Decl."). Sarviss Decl., ¶4. | Undisputed. |
| (5)    Although GDIT gave Sarviss the amorphous title "Operations Analyst V" Sarviss told Thompkins, prior to his deployment to Pakistan, that he "never analyzed any operations in [my] life, nor did [I] feel [I was] qualified to do it." Sarviss Depo., 126:19-127:14 at 127:12-14. Thompkins told Sarviss: "don't worry about it. It's just a job title." Id., 127:15-17. Plaintiff's concern was that "the original solicitation that we got that was on the Internet was looking for helicopter pilots. And we didn't know when our job went from manual labor to driving a desk." Id. 127:15:21. While in Pakistan, "I didn't analyze anybody's operation." Id. 127:22-25. Sarviss Decl., ¶5. | Undisputed that Plaintiff's GDIT job title was "Operations Analyst V." <br><br> Immaterial, irrelevant as to remainder of statement. Plaintiff's perception of his qualifications for the position or of his past experience, and his sharing those perceptions with Kevin Thompkins, is immaterial to this Motion, and, thus, irrelevant under Federal Rules of Evidence 402. |

(6)    On May 11, 2007, Sarviss was provided a document entitled "International Assignment Provisions." That document, executed by Plaintiff on May 14, 2007, states that "[t]his assignment is based on 40 hours per week." Thompkins Decl., Exhibit A, Job Offer, (JS 000000999). The "International Assignment Provisions for John D. Sarviss" detail his California residence as the "[l]ocation considered to be [his] US 'Tax' Home." Id., at JS 000000999. The "International Assignment Provisions for John D. Sarviss" promises that his transportation back to his home at the end of the assignment would be paid for, but Sarviss has not been reimbursed for all of those expenses. Id. ("Transportation . . . [w]ill be provided"). Indeed, the Letter of Understanding to which the "International Assignment Provisions for John D. Sarviss" is attached specifically states that GDIT "will provide for return relocation to your point of origin . . . upon termination of the international assignment." (Id., JS

Immaterial, irrelevant, argumentative. What Sarviss was allegedly "promised" by GDIT has no bearing on any material issues of GDIT's Motion. The pertinent issues in this case are whether GDIT violated California wage and hour laws, including Cal. Labor Code § 2802, and the FLSA, not whether GDIT failed to fulfill a promise or breached any contract (claims which Sarviss has not alleged). Thus, the "facts" raised by Sarviss are irrelevant pursuant to Federal Rules of Evidence 402. GDIT further objects on the ground that the word "promise" as argumentative. GDIT also objects to the extent this mischaracterizes the document, which specifically reads, "Transportation will be provided by the Government client" and not that "transportation back to his home at the end of the assignment would be paid for."

Undisputed as to the contents of the "International Assignments Provisions" and Letter of Understanding.

000000997)  Finally, the "International Assignment Provisions for John D. Sarviss" asserts that GDIT "does not guarantee your employment for any specific period of time and . . . . GDIT may terminate your employment at any time, [f]or any reason, with or without notice." (Id., JS 000001001)  Sarviss Decl., ¶6.

| | |
|---|---|
| (7)    GDIT employees assured Plaintiff that his work would be limited to 40 hours per week.  Before deployment to Pakistan, Sarviss met with Kevin Thompkins at the Fayetteville, North Carolina, GDIT office.  Thompkins told Sarviss that he would not receive overtime for his GDIT work, as he would not be working more than 40 hours per week.  This matter was covered in his deposition.  Sarviss Depo., 74:3-75:10.  Sarviss assumed that he would be paid overtime for hours in excess of eight per day or forty per week.  In every civilian job Sarviss has ever had working as a helicopter pilot or crewmember, he has received overtime | Immaterial, irrelevant.  The issues raised by Sarviss -- whether Sarviss was allegedly "assured" by GDIT that his work would be limited to 40 hours per week, whether Sarviss assumed he would receive overtime, and whether he has received overtime in the past -- have no bearing on any material factual issues of GDIT's Motion.  The pertinent issues in this case are whether GDIT violated California wage and hour laws, including Cal. Labor Code § 2802, and the FLSA, not whether GDIT failed to fulfill a promise or breached any contract (for which Sarviss has not alleged claims).  Thus, the "facts" raised by Sarviss are irrelevant pursuant to |

| | |
|---|---|
| pay. A resume, listing some of his work experience with helicopters, is attached to the Garrison Decl., Exhibit A (p. 170). When that overtime pay was not forthcoming from GDIT, Sarviss did not quit, since he felt his work was helping the war on terrorism, and he wanted to complete the assignment. Sarviss Decl., ¶7. | Federal Rules of Evidence 402. |
| (8)    In May and June of 2007, Sarviss was required to undertake extensive travel and work in the United States. During that period, after Sarviss left from his residence in Leona Valley, California, working for GDIT, he frequently worked in excess of 8 hours per day and 40 hours per week. | <u>Contradicts earlier testimony.</u> GDIT objects to the extent this mischaracterizes and contradicts Plaintiff's prior deposition testimony. See, e.g., <u>Hambleton Bros. Lumber Co.</u>, 397 F.3d at 1225; <u>First</u>, 222 F. Supp. 2d at 1169 n.3. Immediately after being hired, from May 14 to 18, 2007, Sarviss attended the U.S. Army Security Assistance Team Training Orientation Course ("SATTOC") at Fort Bragg, North Carolina. (Sarviss Depo. 80:15-81:8; 83:18-20; Thompkins Decl., ¶ 7.) The SATTOC training lasted one work week, for eight hours each day. (Sarviss Depo. 83:18-22.) Sarviss also alleges that he spent an additional 20 hours that |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

week engaging in tasks to prepare for his deployment, including obtaining equipment at Pope Air Force Base, filling out additional paperwork, receiving the necessary vaccinations, and obtaining his passport, visa and contractor access card. (Id. 83:23-84:16.) In late May 2007, shortly after completing the SATTOC training at Fort Bragg, Sarviss attended a five-day flight safety course in the Dallas/Fort Worth, Texas area. (Id. 103:4-10; 104:12-14.) Sarviss attended the training course from 8:00 a.m. to 5:00 p.m. each day, and was provided two 15-minute rest breaks and a 30-minute lunch break, for a total of eight hours per day. (Sarviss Depo. 105:7-106:7; 107:8-108:2.) Sarviss also alleges that he attended flight simulation exercises for another 1.5-2.5 hours at night. (Id. 108:3-7.) After completing the training course in Texas, Sarviss returned to his home in California to await deployment to Pakistan. (Id. 112:9-12.) He was there for approximately two weeks. (Id. 113:21-24.) On his own initiative, Sarviss spent

| | |
|---|---|
| | time preparing for his deployment, which included packing his bags, conducting research on the Internet, and shopping for and purchasing supplies. GDIT did not ask him to perform any services during that time and that he did not purchase the supplies at GDIT's direction. (Id. 113:25-114:23; 115:7-21; 119:18-121:8; 122:4-123:12.) Sarviss does not claim that he was denied any meal or rest periods during the time he spent in California. (Id. 115:22-116:8.) GDIT did not ask him to work more than eight hours per day or 40 hours per week while he awaited deployment at home in California. (Id. 119:11-15.) |
| In early June, 2007, Sarviss was deployed from Los Angeles International Airport to Pakistan. | Undisputed. |
| During the several months Sarviss worked for GDIT in Pakistan, he frequently worked in excess of 8 hours per day and 40 hours per week. In fact, there were many weeks that Sarviss was required to work in excess of 70 or even | Undisputed. Immaterial, irrelevant. Whether Sarviss worked "in excess of 8 hours per day and 40 hours per week" in Pakistan is undisputed for the purposes of GDIT's Motion, and also is immaterial to any pertinent issues of the |

| | |
|---|---|
| 80 hours in a week.  These efforts were described in his deposition of February 27, 2009, 18:1-19:5; 80:16-81:13; 82:11-16; 83:19-86:1; 103:4-17; 103:24-104:20; 104:25-105:23; 106:23-108:12; 108:24-25; 169:18-170:4; 173:14-174:13; 181:1-2; 216:23-218:15.  Sarviss Decl., ¶8. | Motion.  The actual issue before this court is whether the FLSA or California wage and hour laws apply extraterritorially to work performed in Pakistan, not whether Sarviss in fact worked overtime in Pakistan.  GDIT, therefore, objects to these facts as irrelevant pursuant to Federal Rules of Evidence 402. |
| (9)    Sarviss was never compensated for any overtime he worked. | <u>Undisputed</u> to the extent this "fact" states that Plaintiff, as an exempt, salaried employee, did not receive additional payment based specifically upon hours worked in excess of 8 in a day or 40 in a week. |
| From his experience working for GDIT and interactions with other employees of GDIT, Sarviss understood that his GDIT colleagues had a similar experience: they were advised the work would not exceed 8 hours per day and forty hours per week, but in practice they all worked more than eight hour days, and more than forty hours per week. | <u>Immaterial, irrelevant, calls for speculation, lacks foundation, lacks personal knowledge, and hearsay.</u>  The experiences of unnamed GDIT employees are irrelevant and immaterial to any issues raised by GDIT's Motion (which involve Sarviss' individual claims).  GDIT also objects to these facts as speculative and lacking foundation and personal knowledge.  To |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the extent Sarviss claims that other GDIT employees had a "similar experience" for the entire three-year or four-period prior to the filing of this lawsuit, or who worked for GDIT at the same time as Sarviss, but did not work in the same location, GDIT objects on the grounds that Sarviss lacks foundation and personal knowledge to make such a statement. Sarviss' experience working with his co-workers was limited to two weeks of training in North Carolina and Texas, respectively, and the rest of his employment (June to September 2007) in Pakistan, and, thus, he cannot know through his personal knowledge whether all GDIT employees shared a similar experience for the alleged three or four-year limitations period. GDIT also objects to this sentence because it consists of "double" (is based upon two layers of) hearsay -- out-of-court statements offered to prove the truth of the matters asserted. The first layer of hearsay is based upon statements allegedly made to Sarviss' colleagues (i.e., that "they were advised

GDIT'S REPLY TO PL.'S STMT. OF GEN. ISS. IN OPP.
TO DEF. STMT. OF UNCONTR. F. & CONCL. OF LAW
CV08-1484 DDP (CWX)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the work would not exceed 8 hours per day and forty hours per week"). The second layer of hearsay is based upon statements allegedly made by these colleagues to Sarviss. Sarviss improperly offers both hearsay statements for the truth of the matter asserted -- that the employees were assured that their work for GDIT would not exceed 8 hours per day or 40 hours per week. Both layers are inadmissible hearsay. No exemptions or exceptions to the hearsay rule apply, including admission by a party opponent, because there is no evidence proffered that any of the alleged declarants was acting as a representative of GDIT, was authorized to make such statements, or was acting within the scope of employment, made during the existence of the relationship -- in fact, there is no evidence proffered as to who the alleged declarants even were. See Fed. R. Evid. 801(d)(2); see City of Long Beach, 46 F.3d at 937. Therefore, such testimony is inadmissible hearsay.

| | |
|---|---|
| As articulated in his deposition, before Sarviss went to Pakistan, Sarviss believed that California's overtime laws would apply to his work for GDIT, in California or elsewhere, including Pakistan. Sarviss Depo., 77:2-78:22. Sarviss Decl., ¶9. | <u>Immaterial, irrelevant</u>. This is immaterial for purposes of this Motion. Plaintiff's personal beliefs about what laws applied to his employment are irrelevant to the issues in this Motion, and, thus, GDIT objects pursuant to Federal Rules of Evidence 402. |
| (10)   Throughout his employment by GDIT, Sarviss was routinely deprived of rest periods and meal breaks. Sarviss Depo., 87:22-89:16; 90:9-90:21; 91:3-91:19; 92:5-22; 178:9-12; 179:2-6; 186:16-187:11. Sarviss Decl., ¶10. | <u>Contradicts, at least in part, earlier deposition testimony</u>. Plaintiff testified that, while attending pre-deployment training in Texas, he attended the training course from 8:00 a.m. to 5:00 p.m. each day and was provided two 15-minute rest breaks and a 30-minute lunch break, for a total of eight hours per day. (Sarviss Depo. 105:7-106:7; 107:8-108:2.) In addition, Plaintiff does not claim that he was denied any meal or rest periods during the time he spent in California because he was able to take meal and rest breaks at his discretion. (Id. 115:22-116:8.)<br><br><u>Irrelevant, immaterial, assumes facts not in evidence</u>. Whether or not Sarviss "routinely" missed meal or rest periods |

| | |
|---|---|
| | during his employment is immaterial for the purposes of GDIT's Motion. The issue is whether California's meal and rest period regulations applied to Sarviss' employment outside of California (since, as discussed above, he admits that he is not making a claim for any missed meal or rest periods while at home in California). GDIT also objects to the extent this fact assumes that Plaintiff -- who was classified as an exempt, salaried employee -- was entitled to meal and rest breaks. |
| (11)    After his initial orientation and training in North Carolina and Texas, at the direction of GDIT, Sarviss returned to his California home, awaiting deployment. Sarviss Depo., 112:9-113:20. Sarviss Decl., ¶11. | Undisputed. |
| (12)    While in California awaiting deployment to Pakistan, Sarviss spoke with John Landis, the GDIT Team Leader for his work in Pakistan, several times. Sarviss Depo., 123:2-4. Landis called Sarviss in the middle of the night, due to the time difference between | Contradicts prior deposition testimony. To the extent that Sarviss claims that he spent time in California working _at GDIT's direction_, he directly contradicts his prior sworn deposition testimony. At his deposition, Sarviss testified that while he spent time preparing for his |

Pakistan and California.  During their conversations, Landis told Sarviss that a number of the items that they were required to have were not available in Pakistan.  Landis told Sarviss that he should bring with him anything that Sarviss needed or that Sarviss thought he might need.  They discussed the need for survival equipment, water purification equipment, and medical supplies. Landiss told Sarviss that he would likely become ill from exposure to the local food and water.  Landis told Sarviss that he would likely get diarrhea.  In fact, while in Pakistan Sarviss twice had dysentery. Sarviss Depo., 113:13-20. Accordingly, Sarviss went to his physician in Valencia, California, and secured a prescription for antibiotics and other drugs, and purchased those items at an Albertson's in California on June 6, 2007.  A copy of the Pharmacy receipt is attached as Exhibit 2. The other drugs included medication for constipation and diarrhea.  During one or more of these June, 2007 discussions with Landis while Sarviss was in California, Landiss

deployment in California, he did this -- as he states in his own words -- "on his own initiative."  (Sarviss Depo. 114:24-115:21.)  In fact, while Sarviss <u>now</u> would have the Court believe that John Landis was speaking for GDIT and requiring Sarviss to make such purchases, Sarviss testified to the contrary at his deposition.  According to Sarviss, he "did not have any communications with GDIT, and [he was] not calling John Landis GDIT at all." (<u>Id</u>. 122:14-123:12.)  Landis, in fact, was acting as a "separate entity." (<u>Id</u>.)  Sarviss cannot raise a disputed issue of material fact by contradicting this prior testimony.  <u>See</u>, <u>e.g.</u>, <u>First</u>, 222 F. Supp. 2d at 1169 n.3; <u>Hambleton Bros. Lumber Co.</u>, 397 F.3d at 1225. Furthermore, to the extent Sarviss claims "we were told to go get international driver's licenses," he does not provide any evidence that he was required to obtain one in California.

<u>Exhibit 2 not produced in discovery</u>. GDIT also objects to the use of Exhibit 2

| | |
|---|---|
| told Sarviss that GDIT had survival vests for him in Pakistan, but that they were empty.  Accordingly, Sarviss purchased a survival knife and other items for his survival vest, including bandages, signaling mirrors, flash lights, strobe lights, infrared lasers and, at a Sports Chalet in California, a water purifier.  Sarviss Depo., 113:21-116:2; 119:18-125:10.  At the time of his deployment to Pakistan, it was Plaintiff's understanding that there were no U.S. military bases in the country and that there was no readily available Pakistani source for the above items.  Sarviss Decl., ¶12. | to Sarviss' declaration submitted with Plaintiff's Opposition to GDIT's Motion because Exhibit 2 was never formally produced to GDIT in response to its document requests. |
| (13)    In addition, while awaiting deployment from California, on or about June 1, 2007, Sarviss secured an International Driving Permit.  Sarviss understood that he was required to secure this permit as a condition of his employment in Pakistan. Sarviss Depo., 150:12-13.  Sarviss Decl., ¶13. | <u>Immaterial, irrelevant, contradicts prior testimony</u>.  Plaintiff's declaration and testimony that "we were told to go get international driver's licenses," (Sarviss Depo. 150:12-13), shows only that Sarviss believed he was required to have an international driver's license, and does not establish that GDIT required Plaintiff to obtain one at all, let alone while in California.  Moreover, Sarviss |

| | |
|---|---|
| | does not claim that he incurred any expenses in obtaining such a license. Thus, such facts are irrelevant and immaterial to any material issues for GDIT's Motion.  Moreover, Sarviss cannot raise a disputed issue of material fact by contradicting this prior testimony.  <u>See</u>, <u>e.g.</u>, <u>Hambleton Bros. Lumber Co.</u>, 397 F.3d at 1225; <u>First</u>, 222 F. Supp. 2d at 1169 n.3.  At his deposition, Sarviss was asked what he did in California, and he responded only that he spent time "[p]acking bags, doing research on the Internet about things that I would need that the company didn't provide and John Landis said was supposed to be over there and wasn't."  (Sarviss Depo. 113:21-114:23.) |
| (14)    On July 17, 2007, Sarviss sent GDIT a letter of resignation, noting that "I still have not been reimbursed for expenses incurred on your behalf over 60 days ago for over several thousand dollars."  Garrison Decl., Ex. A, p. 175. | <u>Undisputed</u> that Plaintiff sent a letter of resignation containing the quoted statement. |

| | |
|---|---|
| Thereafter, on August 7, 2007, Sarviss was promised that all of his concerns would be addressed, and Sarviss amended the July 17, 2007, letter of resignation. <u>Id</u>., p. 176; Sarviss Depo., 211:19-212:17. | <u>Immaterial, irrelevant, argumentative, and misstates prior testimony</u>.  What Sarviss was allegedly "promised" by GDIT has no bearing on any material issues of GDIT's Motion.  The pertinent issues in this case are whether GDIT violated California wage and hour laws, including Cal. Labor Code § 2802, and the FLSA, not whether GDIT failed to fulfill a promise or breached any contrac (for which Sarviss has not alleged claims).  Thus, the facts raised by Sarviss are irrelevant pursuant to Federal Rules of Evidence 402.  GDIT further objects on the ground that the word "promise" as argumentative.  GDIT also objects to the extent this "fact" mischaracterizes Plaintiff's testimony.  Plaintiff only testified that "John Landis said he was going to attempt to negotiate with the company to try to get us reimbursed for all this stuff.  And Randy Wills had sent some e-mails that said he was going to look into it."  (Sarviss Depo. 211:19-212:3.) |
| To date, however, Sarviss has yet to be | <u>Immaterial, irrelevant, assumes facts not</u> |

reimbursed for all of his out of pocket expenses incurred on behalf of GDIT. Some of the facts relating to this were described in his deposition. Sarviss Depo., 63:15-65:5; 94:12-19; 94:25-95:12; 95:19-96:2, 5-12; 96:25-97:24; 98:20-99:4; 195:19-196:7; 196:17-197:16; 198:8-12; 199:14-200:17; 200:24-201:6; 203:9-204:2; 236:13-238:1; 238:8-239:6.

in evidence, argumentative. Whether Sarvis has yet been reimbursed for expenses is not at issue in GDIT's Motion. Rather, the issue is whether California law, including California Labor Code 2802, can apply to any expenses incurred outside of California, and whether, for Sarviss' purchases inside California, the expenses were incurred in direct consequence of the discharge of Sarviss' duties while in California. Thus, GDIT objects to these facts on the ground that it is irrelevant to the Motion. GDIT also objects to these facts on the ground that the phrase "incurred on behalf of GDIT" assumes facts not in evidence (i.e., that Sarviss in fact incurred the expenses at GDIT's direction) and is argumentative.

The reason for an amended resignation date had been discussed with responsible individuals at GDIT and was clearly articulated in the August 7, 2007, letter:

This resignation runs
concurrent with an offer

Undisputed. Immaterial, irrelevant. The reasons for Sarviss' resignation or amended resignation are immaterial for purposes of this Motion, and, thus, GDIT objects pursuant to Federal Rules of Evidence 402.

| | |
|---|---|
| letter from the winner of the Kazakhstan Huey II support contract and the early release will provide necessary allocated time for personal preparation prior to training and re-deployment in support of another SATMO mission and to address a legal commitment in South Carolina on September 6, 2007.<br><br>Garrison Decl., Ex. A, p. 176.  Sarviss Decl., ¶14 | |
| (15)    During his GDIT work, Sarviss frequently was required to work in excess of 5 consecutive hours without being provided a meal or rest break. Sarviss was not compensated for any missed meal or rest breaks. | <u>Contradicts, at least in part, earlier deposition testimony, irrelevant, immaterial, assumes facts not in evidence.</u>  Plaintiff testified that, while attending pre-deployment training in Texas, he attended the training course from 8:00 a.m. to 5:00 p.m. each day and was provided two 15-minute rest breaks and a 30-minute lunch break, for a total of eight hours per day.  (Sarviss Depo. 105:7-106:7; 107:8-108:2.)  In |

addition, Plaintiff does not claim that he was denied any meal or rest periods during the time he spent in California because he was able to take meal and rest breaks at his discretion. (Id. 115:22-116:8.) Moreover, whether or not Sarviss "frequently" missed meal or rest periods without compensation during his employment is immaterial for the purposes of GDIT's Motion. The issue is whether California's meal and rest period regulations applied to Sarviss' employment outside of California (since, as discussed above, he admits that he is not making a claim for any missed meal or rest periods while at home in California). GDIT also objects to the extent this "fact" assumes that Plaintiff -- who was classified as an exempt, salaried employee -- was entitled to meal and rest breaks.

Once again, from his personal experience and interactions with other GDIT employees, it was not uncommon for GDIT employees to frequently work in excess of 5 hours without being

Immaterial, irrelevant, calls for speculation, lacks foundation, lacks personal knowledge, hearsay. The experiences of other unnamed GDIT employees are irrelevant and immaterial

GDIT'S REPLY TO PL.'S STMT. OF GEN. ISS. IN OPP.
TO DEF. STMT. OF UNCONTR. F. & CONCL. OF LAW
CV08-1484 DDP (CWX)

provided a meal or rest break.  Sarviss Decl., ¶15.

to any issues raised by GDIT's Motion (which involve Sarviss' individual claims), and, thus, inadmissible pursuant to Federal Rules of Evidence 402.  To the extent that Sarviss claims that the statement applies to GDIT employees for the entire three- or four-year period prior to the filing of this lawsuit, or to GDIT employees who worked for GDIT during the same time as Sarviss, but at different locations, GDIT objects on the grounds that Sarviss lacks foundation and personal knowledge to make such a statement.  Sarviss' experience working with his co-workers was limited to two weeks of training in North Carolina and Texas, respectively, and the rest of his employment (June to September 2007) in Pakistan, and, thus, he cannot know through his personal knowledge whether all GDIT employees shared a similar experience for the alleged three- or four-year limitations period.  Consequently, this testimony is inadmissible pursuant to Federal Rules of Evidence 602.  GDIT also objects on the ground that the evidence is inadmissible hearsay

GDIT'S REPLY TO PL.'S STMT. OF GEN. ISS. IN OPP.
TO DEF. STMT. OF UNCONTR. F. & CONCL. OF LAW
CV08-1484 DDP (CWX)

|  | pursuant to Federal Rules of Evidence 801. To the extent that Sarviss' statement is based on interactions (i.e., conversations) with his co-workers, GDIT objects to this sentence because it is hearsay. Sarviss improperly offers this hearsay testimony to prove the truth of the matter asserted -- that "it was not uncommon for GDIT employees to frequently work in excess of 5 hours without being provided a meal or rest break." No exemptions or exceptions to the hearsay rule apply, including admission by a party opponent, because there is no evidence that any of the declarants were acting as a representative of GDIT, were authorized to make such statements, or were acting within the scope of employment, made during the existence of the relationship. See Fed. R. Evid. 801(d)(2); see City of Long Beach, 46 F.3d at 937. Therefore, such testimony is inadmissible hearsay. |
|---|---|
| (16)   While deployed by GDIT in Pakistan, Sarviss was under armed-guard supervision at all times. Sarviss was not allowed to leave his hotel room | Immaterial, irrelevant. The facts in this paragraph are immaterial and irrelevant to any pertinent issue in GDIT's Motion. Therefore, it is inadmissible pursuant to |

| | |
|---|---|
| for any reason without armed-guard supervision. In other words, Sarviss was always under full and complete control of GDIT, and could not engage in any personal activities. Sarviss Decl., ¶16. | Federal Rules of Evidence 402. |
| (17)    While deployed by GDIT in Pakistan, Sarviss worked with experienced Pakistani helicopter pilots. Sarviss did not teach them how to fly helicopters. Before he left for Pakistan, Sarviss was advised by GDIT that each of these Pakistani helicopter pilots had at least 2000 hours of helicopter flight experience. Sarviss described this in his deposition. Sarviss Depo., 56:16-25. Although he later learned that this was not true, each of the Pakistani's knew how to fly a helicopter before Sarviss met them. John Landis of GDIT was responsible for training the Pakistani helicopter pilots on basic night vision flying techniques. Each of the Pakistani helicopter pilots was provided with written materials to study and each was required to attend ground classroom sessions regarding Night Vision flying techniques. Sarviss Depo., 132:9- | Contradicts prior deposition testimony. As discussed above, under the "sham" affidavit rule, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue of material fact and to defeat summary judgment. See, e.g., First v. Allstate Ins. Co., 222 F. Supp. 2d 1165, 1169 n.3; Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225. It is clear from the Sarviss' deposition testimony that he was "training students" while in Pakistan. (Sarviss Depo. 51:8-12; 103:4-10; 104:9-14; 130:6-17; 131:8-132:8; 157:11-166:20; 181:14-186:15; 199:14-200:17; 209:19-210:10; 227:14-228:25, Ex. 13.) See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. |

| | |
|---|---|
| 134:14; 157:11-25. During his work in Pakistan, Sarviss acted as a co-pilot or crewmember for the experienced Pakistani helicopter pilot, ready to take the controls, if necessary. Sarviss Depo., 158:12-160:1. This is routine work for individuals who are experienced in helicopters, routine manual work for which those in the industry ordinarily are paid overtime wages. Sarviss Decl., ¶17. | |
| (18)   Despite the implications of the defense argument in its Motion for Summary Judgment, as articulated in his deposition, Sarviss was "n[o]t put . . . in charge of GDIT" in Multan. Sarviss Depo., 163:2-13. A new Pakistani commander was assigned to the base in Multan and, at his request and as "a favor that was asked by the Pakistani commander" Sarviss assisted him in evaluating some of the Pakistani helicopter pilots. Id. 165:20-166:9. The Pakistani commander "asked Landis to ask me if I would do it." Id., 166:10-13. This activity was beyond the scope of his assignment and beyond the scope of | Contradicts prior deposition testimony. Sarviss cannot now raise a dispute by contradicting his prior deposition testimony. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. Indeed, Sarviss testified explicitly that "I couldn't rely on John Landis because John Landis wasn't even signed off to be an instructor pilot by Lieutenant Colonel Shahid, who was the base commander, because he failed the check ride with him," (Sarviss Depo. 162:19-163:5), and that Landis "was not qualified to carry [Plaintiff's] helmet bag. (Id. 165:2-10.) He also testified that "[a]ll I can tell |

what GDIT was to do in Multan, but Sarviss agreed to help as a favor. The activity was entirely incidental to his job, and took relatively little time. Sarviss Decl., ¶18.

you is that the new commander that came in wasn't qualified to fly the aircraft or flight on night vision goggles, so he needed all the help that he could get." (Id. 164:4-12.)  In light of Landis and the new commander's lack of skills, Plaintiff was told "you're the only one with experience here. You go out and fly these things" and was "made the SIP for the 25th squadron." (Id. 162:19-163:5.) Indeed, Sarviss testified that while Lieutenant Shahid "couldn't put [Sarviss] in charge of GDIT, … he certainly put me in charge as far as they gave me a set of Pakistani wings and a Pakistani name tag and a patch and said you're the man." (Id. at 163:8-16.)

(19)  Significantly, Sarviss knows of no training or certification that is required or available for one who is involved in training others to fly helicopters with night vision goggles.  This was covered in his deposition, at 39:12-23.  Indeed, as described in his deposition, learning how to fly with night vision goggles is nothing more than "[f]lying on night vision goggles, takeoffs, landing, night

Immaterial, irrelevant, misstates and contradicts prior deposition testimony. That Sarviss did not need special training or certification to train others to fly helicopters with night vision goggles is immaterial to GDIT's Motion, and, thus, irrelevant pursuant to Federal Rules of Evidence 402.  Rather, the issue is whether Sarviss acquired specialized training and knowledge as a

vision goggle failure, idiosyncratic things that come from wearing them, limited field of view . . . It's kind of on-the-job training." Id. 39:24-40:12.

flight instructor that he applied in his GDIT position, and indeed, he testified that he did. Sarviss cannot now raise a dispute by contradicting his prior deposition testimony. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. Sarviss testified that, as stated on the job posting, he was required to be an SIP and/or IP as well as an Army Master Aviator, that each of these classifications required specialized training, experience and knowledge, and that he did in fact meet these specialized requirements. Indeed, Sarviss does not dispute these facts. (Sarviss Depo. 10:12-11:7; 14:4-23; 24:8-26:13; 39:6-11; 39:24-40:25; 42:9-44:5; 44:8-45:11; 45:17-19 & Ex. 1 & 3.) See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 3-8.

Sarviss did not really instruct others in the use of night vision goggles as much as ride with the experienced Pakistani helicopter pilots so he would be available to take over control of the

Contradicts prior deposition testimony. As discussed above, under the "sham" affidavit rule, Sarviss is bound to his deposition testimony; he cannot change it in an attempt to raise a disputed issue

helicopter in the event that they had a problem. Their "training" consisted of the reading materials that Mr. Landis gave to them, his on the ground lectures, and their securing practical "on the job" experience while Sarviss sat next to them in the helicopter, ready to take the controls, if necessary.

of material fact and to defeat summary judgment. See, e.g., Hambleton Bros. Lumber Co., 397 F.3d at 1225; First, 222 F. Supp. 2d at 1169 n.3. It is clear from the Sarviss' deposition testimony that he was "training students" while in Pakistan. (Sarviss Depo. 51:8-12; 103:4-10; 104:9-14; 130:6-17; 131:8-132:8; 157:11-166:20; 181:14-186:15; 199:14-200:17; 209:19-210:10; 227:14-228:25, Ex. 13.) See also GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28.

As stated in his deposition, learning how to fly with night vision goggles is a simple matter of practical experience. Id., 40:24-25. Sarviss Decl., ¶19.

Immaterial, irrelevant, argumentative, misstates Plaintiff's deposition testimony. Plaintiff did not testify at deposition that "learning how to fly with night vision goggles is a simple matter of practical experience." Rather, plaintiff's entire testimony put in context the fact that he received NVG training while in the military, and such training required hands-on experience (i.e., "practical experience"). Whether or not learning how to fly with NVGs involved "practical experience" is not at issue in

| | |
|---|---|
| | GDIT's Motion.  As discussed above, in order to be considered qualified for his GDIT position, Sarviss was required to satisfy several technical requirements (including SIP/IP certification and classification as Army Master Aviator), and he did.  Accordingly, such evidence is irrelevant for the purposes of GDIT's Motion and, thus, is inadmissible pursuant to Federal Rules of Evidence 402. |
| (20)    Attached as Exhibit B to the Thompkins Decl. are true and accurate copies of paystubs Sarviss received from GDIT.  Although they reflect part of GDIT's name on the pay stub, it does not indicated [sic] whether it is in fact his employer, or if his employer is in fact Anteon Corp., which name is also listed on the pay stub, or whether Sarviss was an employee of General Dynamics Company, which name is also listed on the pay stub.  The wage statement does not identify the legal name of his employer. | Best evidence rule, misstates the evidence.  Sarviss misstates the information on his pay stub.  Sarviss claims that his paystubs failed to reflect the name of his employer.  This is clearly not true.  The very first four words at the very top of each of Sarviss' pay stubs are "General Dynamics Information Technology," and also printed on each paystub is GDIT's Virginia address.  The documents speak for themselves, and, thus, GDIT objects to the extent these alleged facts as they violate the best evidence rule under |

| | Federal Rules of Evidence 1000, et seq. |
|---|---|
| In addition, the wage statements fail to list the correct total overtime hours Sarviss worked or provide detail regarding compensation for missed meal/rest breaks.  The wage statements also fail to indicate the total hours worked or the applicable hourly rates in effect during the pay period. | Legal conclusion, assumes a legal conclusion: GDIT objects on the ground that these statements are a legal conclusion and improper lay opinion testimony.  Here, statements regarding a legal conclusion pertaining to an ultimate legal issue in this case -- whether GDIT improperly "failed" to provide information on Sarviss' pay stub pursuant to the California Labor Code -- are to be decided by this Court and/or trier of fact.  GDIT also objects on the grounds that these statements assume a legal conclusion --that GDIT was required by law to provide such information on Sarviss' pay stub -- which is yet to be decided by this Court and/or trier of fact. |
| Sarviss found his wage statement to be quite confusing. | Irrelevant and immaterial.  Sarviss' belief that the wage statement was "quite confusing" is immaterial to any pertinent issue in GDIT's Motion.  Thus, such evidence is inadmissible because it is |

| | |
|---|---|
| | irrelevant pursuant to Federal Rules of Evidence 402. |
| Each wage statement was mailed to him at his Leona Valley, CA address, rather than provided to him in Pakistan, as Sarviss requested.  Sarviss Depo., 69:8-23. | <u>Irrelevant, immaterial</u>.  Where GDIT mailed Sarviss' wage statement is immaterial to any pertinent issue in GDIT's Motion, which challenges Sarviss' personal claims.  Thus, such evidence is inadmissible because it is irrelevant pursuant to Federal Rules of Evidence 402. |
| Paula Coombs of GDIT HR told Sarviss that this was "a company-wide problem." <u>Id</u>., 70:14-19. | <u>Irrelevant, immaterial</u>.  This statement is immaterial to any pertinent issue in GDIT's Motion.  Thus, such evidence is inadmissible because it is irrelevant pursuant to Federal Rules of Evidence 402. |
| Each reflects a deduction for California income tax.  Each reflects deduction for California unemployment insurance premiums.  Sarviss Decl., ¶20. | <u>Undisputed</u>.  <u>Irrelevant, immaterial, best evidence rule</u>.  This statement is immaterial to any pertinent issue in GDIT's Motion.  Thus, such evidence is inadmissible because it is irrelevant pursuant to Federal Rules of Evidence 402.  GDIT also objects on the grounds that the statements violate the nest |

| | |
|---|---|
| | evidence rule, pursuant to Federal Rules of Evidence 1000, et. seq, because the paystubs speak for themselves. |
| (21)    His final wage statement was dated October 18, 2007, long after Sarviss had been terminated. Thompkins Decl., Ex. B (JS-000001545).  His final regular paycheck was dated September 20, 2007, long after his last day of work, the date on which Sarviss was returned to California, on or about September 13, 2007. Id. (JS-000001544).  According to documentation Sarviss received from GDIT entitled "Important Information for Employees Separating from GDIT Corporation": <br><br> Your last day worked is your termination date. Any accrued, unused General Leave to which you may be entitled will automatically be included in your final check; conversely, where permitted by law, your final check will reflect | Irrelevant, immaterial, contradicts prior deposition testimony, best evidence rule. This information is immaterial to any issue pertinent to GDIT's Motion. Whether GDIT terminated Sarviss' employment on September 4, 2007, or as Sarviss now alleges, September 13, 2007 is immaterial to any issue in GDIT's Motion.  Moreover, Sarviss cannot now dispute that his separation from employment was effective September 4, 2007, because his prior sworn deposition testimony concurred with this fact.  See, e.g., First v. Allstate Ins. Co., 222 F. Supp. 2d 1165, 1169 n.3; Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225.  During deposition, when asked when he separated from GDIT, Plaintiff replied "Well, if you go back to the document that you had about my separation, they actually filled it out on the 12th when I was there but I separated on the 2nd or the 3rd [of September]."  (Sarviss Depo. |

deductions for any used but not accrued general leave. Your final paycheck will be paid as either a 'live' check or 'direct deposit' depending upon your payroll elections at time of payout. **Final paychecks will be issued on the next regularly scheduled pay date, unless otherwise required by state law.** Exhibit 3 (emphasis in bold).

Sarviss Decl., ¶21 (emphasis in original).

144:16-23.) In addition, when asked at deposition about a document which indicated "[u]p in the upper -- well, towards the right it says separation date 9/4/07. Last day worked is separation date. Was that your last day worked, 9/4/07?," Sarviss replied "I believe so." (Id. 239:16-19.) Plaintiff's other proffered evidence regarding wage statements is irrelevant and immaterial to this fact and does not dispute the core of the fact as stated. GDIT also objects to the extent that these statements violate the best evidence rule pursuant to Federal Rules of Evidence 1000, et seq., because the documents speak for themselves.

(22)    The wage statements reflected in Exhibit B to the Thompkins Decl. clearly listed California as his "State of Residence." The wage statements indicated deductions for "CA Withholding" and "CA SDI FTDI" (Id.)

Undisputed as to Sarviss' residency.

Irrelevant, immaterial, best evidence rule. The fact that he paid California taxes and state disability is immaterial to any pertinent issue in GDIT's Motion. Thus, such evidence is inadmissible because it is irrelevant pursuant to Federal Rules of Evidence 402. GDIT

| | |
|---|---|
| | also objects on the grounds that the statements violate the nest evidence rule, pursuant to Federal Rules of Evidence 1000, <u>et. seq</u>, because the paystubs speak for themselves. |
| GDIT recognized that California State Law would apply to his separation from GDIT (Exhibit 3). Sarviss Decl., ¶22. | <u>Misstates the evidence, hearsay, lacks foundation and calls for speculation, best evidence rule</u>.  GDIT objects to this statement because it misstates the evidence cited.  Plaintiff cites to Exhibit 3 of his declaration for the proposition that "GDIT recognized that California State Law would apply to my separation from GDIT."  Exhibit 3 ("Important Information For Employees Separating From GDIT Corporation"), however, does not state that California law would apply to his separation, but rather only that "[f]inal paychecks will be issued on the next regularly scheduled pay date, unless otherwise required by state law."  To the extent Sarviss' statement is based on interactions or conversations with GDIT employees, GDIT objects on the ground that it is hearsay.  Sarviss improperly offers this hearsay testimony |

|  |  |
|---|---|
|  | to prove the truth of the matter asserted -- that "GDIT recognized that California State Law would apply to my separation from GDIT." No exemptions or exceptions to the hearsay rule apply, including admission by a party opponent, because Sarviss has not provided any evidence -- as is his burden to do so -- that any of the declarants was acting as a representative of GDIT, was authorized to make such statements, or was acting within the scope of employment, made during the existence of the relationship. See Fed. R. Evid. 801(d)(2); see City of Long Beach, 46 F.3d at 937. Therefore, such testimony is inadmissible hearsay. GDIT also objects on the grounds that the statements violate the nest evidence rule, pursuant to Federal Rules of Evidence 1000, et. seq, because the paystubs speak for themselves. |
| (23)    There are tremendous differences between flying a helicopter and flying an airplane. Sarviss is licensed to fly both helicopters and airplanes. It is infinitely easier to fly an airplane than a | Immaterial, irrelevant. GDIT objects to this "fact" as irrelevant and immaterial for purposes of this Motion, and, thus, is inadmissible pursuant to Federal Rules of Evidence 402. Plaintiff's and Harry |

helicopter. Comparing the difficulty of flying a helicopter versus a flying a plane is like comparing driving a car to maneuvering a unicycle. The two vehicles are operated differently and built differently. Sarviss was reminded of a quote by the ABC New Reporter, Harry Reasoner. Reasoner said: "The thing is helicopters are different from airplanes. An airplane by it's nature wants to fly, and if not interfered with too strongly by unusual events or incompetent piloting, it will fly. A helicopter does not want to fly. It is maintained in the air by a variety of forces and controls working in opposition to each other. And if there is any disturbance in this delicate balance the helicopter stops flying immediately and disastrously. There is no such thing as a gliding helicopter. That's why being a helicopter pilot is so different from being an airplane pilot, and why in generality airplane pilots are open, clear-eyed, buoyant, extroverts. And helicopter pilots are brooders, introspective anticipators of trouble.

Reasoner's opinions regarding the differences between flying an airplane and a helicopter do not relate to the material issues raised by this Motion.

They know if something bad has not happened it is about to." http://www.searchk9.net/helitac/ harryreasoner.htm. A helicopter is a tender and delicate balancing act, not unlike juggling on a unicycle. Flying a helicopter such as the one Sarviss used in Pakistan requires constant manual effort.

It is <u>routine</u> manual and physical work involving <u>repetitive</u> operations with the pilot's hands, physical skill and energy. Sarviss Decl., ¶23.

<u>Contradicts prior deposition testimony</u>. This contradicts Sarviss' prior deposition testimony. Sarviss testified that, during a training flight, Sarviss typically would put NVGs on the trainee and give him the controls to the helicopter. (Sarviss Depo. at 158:12-160:1.) Plaintiff constantly monitored the helicopter's instruments, and took the controls away from the pilot if necessary. He also checked to ensure that the pilot trainee was interpreting the terrain correctly. For example, water can "sometimes look like sky and vice versa,' and fatal accidents could occur if the pilot relies solely on visual cues." (<u>Id</u>. 158:12-160:1;

| | 185:25-186:15.)  <u>See</u> <u>also</u> GDIT's Reply to Plaintiff's Response to Paragraph Nos. 2, 28. |
| --- | --- |

## <u>CONCLUSIONS OF LAW</u>

GDIT's Statement sets forth its conclusions of law, and Sarviss has set forth his response in Plaintiff's Statement.  For the reasons set forth in GDIT's Motion and Reply (and all of its supporting papers), GDIT believes it is entitled to, and respectfully requests that the Court enter, the conclusions of law set forth in GDIT's Statement.

DATED: June 8, 2009.                         Respectfully submitted,


      /s/ Framroze M. Virjee
Framroze M. Virjee
Attorneys for Defendant General
Dynamics Information Technology,
Inc.